Lester E. SCHLITZ, Plaintiff–Appellee,

v.

COMMONWEALTH OF VIRGINIA,
Defendant–Appellant,

and

The Supreme Court of Virginia; Honorable Harry Lee Carrico, Chief Justice of the Supreme Court of Virginia, Defendants.

No. 88–1578.

United States Court of Appeals,
Fourth Circuit.

Argued June 7, 1988.

Decided Aug. 19, 1988.

Gregory E. Lucyk, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., H. Lane Kneedler, Chief Deputy Atty. Gen., Gail Starling Marshall, Deputy Atty. Gen., Cleo E. Powell, Sr. Asst. Atty. Gen., on brief), for defendant-appellant.

Gary Howard Simpson (Simpson and Ehrlich, P.A., Henry L. Marsh, III, Hill, Tucker & Marsh, on brief), for plaintiff-appellee.

Before WINTER, Chief Judge, and RUSSELL and WILKINS, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

Lester E. Schlitz, plaintiff, sued the Commonwealth of Virginia (the Commonwealth) claiming that the failure of the Virginia General Assembly (the Assembly) to reelect him to the position of circuit judge for the City of Portsmouth, Virginia upon the expiration of his term, constituted age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* (1985). The Commonwealth moved to dismiss or for summary judgment pursuant to Rules 12(b)(1) and 56(b), F.R.Civ.P. It argued first, that Congress intended by the language of § 630(f),[1] to exclude judges elected by the legislature, as well as those elected by the voters, from the operation of the ADEA;

---

1. The pertinent language of § 630(f) is as follows:

The term "employee" means an individual employed by any employer except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency, or political subdivision. . . .

second, that even if Congress intended not to exempt such judges, Congress was not empowered to extend the ADEA to cover any state judges; and third, that even if the ADEA did apply, this suit was barred by the doctrine of legislative immunity. The district court denied the motion, 681 F.Supp. 330 (1988).

The Commonwealth appeals contending only that the suit is barred by the doctrine of legislative immunity. We agree. We reverse and remand the case with direction to enter summary judgment for the Commonwealth.

## I.

The Assembly declined to reelect plaintiff upon the expiration of his eight-year term on January 31, 1987. Plaintiff reached seventy on January 6, 1987. Under a state statute effective since March 1, 1962, Virginia state judges are required to retire at the age of seventy. Va.Code § 51–167(a) (1982). In 1986, the ADEA was amended to proscribe the permissible mandatory retirement age of seventy. 29 U.S.C.A. § 631(a) (West Supp.1988) (effective Jan. 1987). The Assistant Executive Secretary of the Supreme Court of Virginia, Frederick A. Hodnett, Jr., stated in an uncontroverted affidavit that "Virginia's mandatory retirement provisions have not been implemented or enforced since January 1, 1987" as a result of the 1986 amendments to the ADEA. Hodnett further indicated that two judges continue to sit notwithstanding their having reached the age of seventy.

Upon the General Assembly's failure to reelect him, plaintiff brought suit alleging discrimination in violation of the ADEA. As evidence, plaintiff cited a note by the Chief Justice of the Supreme Court of Virginia to the Governor of Virginia, indicating that under the Commonwealth's mandatory retirement provision for judges, a vacancy would be created upon the expiration of plaintiff's term, if the provisions of Virginia law are still valid. In the note, the Chief Justice also said that, absent a decision invalidating the Virginia law, "we must presume its continuing validity."

The district court denied the Commonwealth's motion, ruling that, in fact, Congress did intend to include state judges selected by other than popular vote within the purview of the ADEA, i.e. that it did not intend to exempt them, and that Congress was so empowered, *see Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 550, 105 S.Ct. 1005, 1017, 83 L.Ed.2d 1016 (1985) (rejecting the notion of "a sacred province of state autonomy"). The district court then stated in a footnote that defendant's claim of legislative immunity was lacking in merit. The district court rejected the reasoning of *Apkin v. Treasurer and Receiver General*, 401 Mass. 427, 517 N.E.2d 141 (1988) (ADEA not intended to apply to state judges not chosen by popular vote), and *EEOC v. Massachusetts*, 680 F.Supp. 455 (D.Mass.1988) (same), and concluded that state judges not elected by qualified voters are not exempt. The district court rejected defendant's argument that this creates an "absurd result" in that only the ten states that fail to select their judges by popular vote would be subject to the ADEA. It reasoned that the relevant distinction drawn by the statute is not elected versus non-elected judges but, more generally, elected versus appointed officials.

As we have said, the Commonwealth appeals solely on the issue of legislative immunity. We agree that the issue of legislative immunity is controlling, and so we turn to it.

## II.

Whether or not *Apkin* and *EEOC* were correctly decided, it is clear that the issue addressed in those cases is different from that presented in this case. In *Apkin* and *EEOC* it was uncontroverted that the reason for the state's failure to reappoint the plaintiff judges was the state's mandatory retirement law. *See Apkin*, 401 Mass. at 429, 517 N.E.2d at 142 ("There is not the least doubt that, for the purposes of State law, the 1972 amendment [to the Massachusetts Constitution] compels the retirement of a Massachusetts judge who attains the age of seventy."); *EEOC*, 680 F.Supp. at

457 ("Since the effective date of this 1972 amendment, judges in the Commonwealth have been mandatorily retired at age 70."). In this case, by contrast, the Commonwealth has made clear that as a result of the ADEA, its mandatory retirement law for judges is no longer being observed. In its answer to plaintiff's complaint the Commonwealth set forth alternative bases for its failure to reappoint plaintiff, including first, an agreement made when plaintiff was elected that he would serve only a single term,[2] and second, that complaints regarding plaintiff's capabilities and demeanor on the bench indicated that he had not performed satisfactorily as a sitting judge. Thus, while the *Apkin* and *EEOC* courts addressed first, whether the ADEA's bar to a mandatory retirement provision was intended to apply to non-elected state judges, and second, if so, whether the ADEA displaced the state's retirement provision or whether the tenth amendment barred its application, we are not being asked to consider whether the Virginia statute is valid on its face. Instead, we are being asked to consider whether the Assembly's purported motives for declining to reelect plaintiff are a pretext for age discrimination. This inquiry, in our view, runs squarely afoul of the doctrine of legislative immunity.

The rationale underlying the doctrine of legislative immunity was succinctly set forth by the Supreme Court in *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), in which Justice Frankfurter stated for the Court:

> Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives.

*Id.* at 377, 71 S.Ct. at 788. For that reason, the Supreme Court extended the protection in the speech and debate clause, U.S. Const. Art. I, § 6, for members of the United States Senate and House of Representatives, to state legislators, holding that state legislators are protected by the doctrine of legislative immunity for actions taken within the "sphere of legitimate legislative activity." *Id.* at 376, 71 S.Ct. at 788. *See also Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 405, 99 S.Ct. 1171, 1179, 59 L.Ed. 2d 401 (1979) ("The reasoning [underlying the doctrine of legislative immunity] is equally applicable to federal, state and regional legislators.").

Plaintiff's reliance on *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), for the proposition that legislative immunity is not absolute is misplaced. In *Davis* the Supreme Court addressed only whether the due process clause of the fifth amendment carried an implied right of action for damages due to discrimination. The Court specifically declined to consider whether the speech and debate clause was a bar to suit. *Id.* at 235, n. 11, 99 S.Ct. at 2271, n. 11.

Where, as here, the suit would require legislators to testify regarding conduct in their legislative capacity, the doctrine of legislative immunity has full force. *See Dombrowski v. Eastland*, 387 U.S. 82, 85, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577 (1967) (The speech and debate clause provides federal legislators absolute immunity "not only from the consequences of litigation's results but also from the burden of defending themselves."); *cf. Forrester v. White*, —— U.S. ——, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (state court judge not immune from suit for firing probation officer since the action was an administrative rather than judicial function). The immunity doctrine applies whether the suit is for damages or for injunctive relief. *See Supreme Court*

---

**2.** This explanation is not overly persuasive since at the time the alleged agreement was reached, the mandatory retirement provision would have precluded the Assembly from reappointing plaintiff. It is the Commonwealth's second explanation that provides the nucleus for its immunity claim.

*of Virginia v. Consumers Union of the United States,* 446 U.S. 719, 732, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980); *see also Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 503, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1975) ("Just as a criminal prosecution infringes upon the independence which the [Speech and Debate] Clause is designed to preserve, a private civil action, whether for an injunction or damages, creates a distraction and forces Members [of Congress] to direct their time, energy, and attention from their legislative tasks to defend the litigation.").

The decision of the Assembly to elect a state judge involves a core legislative function. It involves deliberative and communicative processes by legislators at the committee level through a vote on the floor of both houses of the Assembly. Plaintiff does not and cannot maintain that the failure to reelect plaintiff was other than a legislative decision, but rather, maintains that the ADEA proscribes the General Assembly from discriminating based upon age. The flaw in this argument is that the Commonwealth would be unable to defend this action unless the legislators testify as to their motives for declining to reelect plaintiff. This the doctrine of legislative immunity will not allow. Moreover, the alternative remedy to damages sought in this action, an injunction requiring the General Assembly to elect plaintiff, would constitute an unwarranted intrusion by a federal court into a state legislative process. We therefore hold that the doctrine of legislative immunity bars this action.

### III.

Finally, we reject plaintiff's argument that he can circumvent the doctrine of legislative immunity by declining to name as defendants individual legislators. The purpose of the doctrine is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves. *See, e.g., Gravel v. United States,* 408 U.S. 606, 616, 92 S.Ct. 2614, 2622, 33 L.Ed.2d 583 (1972) ("We have no doubt that Senator Gravel may not be made to answer—either

in terms of questions or in terms of defending himself from prosecution—for the events that occurred at the subcommittee meeting."). Thus, the naming of the Commonwealth as the sole defendant does not save this lawsuit.

REVERSED AND REMANDED.