964 F.2d 1441
 Maryjane HOLLYDAY, Plaintiff-Appellant,
v.
Gene E. RAINEY, Chairman of the Buncombe County
Commissioners, in his official capacity and in his personal
capacity; Doris P. Giezentanner, in her official capacity
and in her personal capacity; Jesse I. Ledbetter; C.T.
Sobol, in his official capacity and in his personal
capacity; William H. Stanley, in his official capacity and
in his personal capacity; Michael Kirstein, in his official
capacity and in his personal capacity; Robert Thornberry,
Jr., in his official capacity and in his personal capacity,
Defendants-Appellees.
BUNCOMBE COUNTY, a North Carolina County, Defendant,
v.
Robert Curtis RATCLIFF, Third Party Defendant-Appellee.
 No. 91-2079.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 3, 1991.
Decided May 26, 1992.
 
 Charles Robinson Brewer, Asheville, N.C., argued, for plaintiff-appellant.
 William Alfred Blancato, Hendrick, Zotian, Cocklereece & Robinson, Winston-Salem, N.C., argued, for defendants-appellees.
 Before HALL and LUTTIG, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 K.K. HALL, Circuit Judge:
 
 
 1
 Mary Jane Hollyday appeals the dismissal of her federal civil rights claims and related state claims. We affirm.
 
 I.
 
 2
 Hollyday was hired by Buncombe County, North Carolina, in January, 1987, to a newly-created position as office manager in the Assessor's Office. In the November, 1988, county election, Hollyday's political party was voted out of power. The county Board of Commissioners soon thereafter abolished her position. Contemporaneously with these events, the Assessor solicited applications for the position of assistant tax assessor, a position that had been budgeted for years, but had remained unfilled since before Hollyday's employment. Hollyday applied, but this position was also abolished by the Board of Commissioners before anyone had been offered the job.
 
 
 3
 Hollyday then brought this action against the County, the members of the Board, and two other County officials for monetary, injunctive, and declaratory relief. Basically, she claimed that her constitutional rights of free speech and association were violated by the defendants' elimination of the office manager position and by the refusal to hire her for the assistant tax assessor job. She also included claims grounded in state law for intentional infliction of emotional distress and breach of contract. Her claims died in three stages: summary judgment, failure to state a claim, and refusal to exercise pendant jurisdiction.
 
 II.
 
 4
 The magistrate judge recommended that the defendants' summary judgment motion be granted with respect to Hollyday's § 1983 free speech/association claims and the state-law claim for intentional infliction of emotional distress. The district court adopted the magistrate judge's recommended conclusion of law that the doctrine of legislative immunity was a complete defense to these claims by all defendants. I agree.
 
 
 5
 As we have recently explained in Schlitz v. Commonwealth of Virginia, 854 F.2d 43, 45 (4th Cir.1988), "[w]here ... the suit would require legislators to testify regarding conduct in their legislative capacity, the doctrine of legislative immunity has full force." To prevail on her claims, Hollyday would necessarily have to show that her political affiliation was a determining factor in the Board of Commissioners' legislative decisions to abolish the position that she held and the position for which she applied. Either her case or the defense would perforce require testimony of the legislators involved regarding their motives. See id.
 
 
 6
 Hollyday argues that legislative immunity is aimed only at protecting the purses of individual legislators and that it should not in any way bar her claims against the City itself. This argument misconstrues the fundamental rationale for the doctrine. Legislators must be permitted to discharge their legislative duties without fear of being subjected to the cost and inconvenience of a trial at which their motives come under scrutiny. Id.; Baker v. Mayor & City Council of Baltimore, 894 F.2d 679, 681-82 (4th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990). The doctrine of legislative immunity insulates a governmental entity from liability only in cases where the cause of action is dependent on finding that legislation was enacted because of improper motives. Such is the case here.[1]
 
 III.
 
 7
 The district court also dismissed Hollyday's § 1983 claim relating to the City's refusal to hire her for the assistant tax assessor position for failure to state a claim for which relief could be granted. Fed.R.Civ.P. 12(b)(6). This position had not been occupied for years prior to Hollyday's attempt to obtain the job, and the position was abolished before it was ever filled. Hollyday contends nevertheless that she had a protected property interest in the position. She has not, however, directed our attention to, nor has our research uncovered, any support for the proposition that a jobseeker has any property rights in a position that has never been occupied by the jobseeker and that has been completely abolished by a legislative act. We affirm on this alternative ground.
 
 IV.
 
 8
 Hollyday also complains about the district court's decision to decline to exercise pendant jurisdiction over the remaining state claims. Inasmuch as her only argument is that the court erred in dismissing her federal claims, our affirmance of those rulings dictates affirmance of the discretionary decision to dismiss the pendant claims. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).[2]
 
 
 9
 For the foregoing reasons, as explained more fully in the extensive analysis set forth in the magistrate judge's "Memorandum and Recommendation" and adopted by the district court, we affirm.
 
 
 10
 AFFIRMED.
 
 
 11
 LUTTIG, Circuit Judge, concurring in the judgment and concurring in the opinion in part:
 
 
 12
 I concur in parts I, III, and IV of Judge Hall's opinion. Because I would affirm the district court's award of summary judgment to the defendants on Mary Jane Hollyday's First Amendment claim on grounds different from those relied upon by Judge Hall, however, I join only the judgment reached in part II of his opinion.
 
 
 13
 In part II, Judge Hall would extend absolute immunity to Buncombe County under 42 U.S.C. § 1983 for the constitutional violations alleged by Hollyday because the County's officers are absolutely immune from testifying about their conduct as legislators. Ante at 1443. He concludes that this extension of the testimonial immunity of the County's officers derivatively to the County itself is compelled by this court's decisions in Baker v. Mayor & City Council, 894 F.2d 679, cert. denied, --- U.S. ----, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990), and Schlitz v. Virginia, 854 F.2d 43 (1988), which held that a city and a state, respectively, were immune from liability for alleged violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, because their defense to the allegations would require the privileged testimony of the city's and the state's officers as to their motives in enacting particular legislation. See Baker, 894 F.2d at 682; Schlitz, 854 F.2d at 46.
 
 
 14
 In my view, extension of Baker and Schlitz to the constitutional claim advanced by Hollyday in this case would be, at the very least, in substantial tension with, if not foreclosed by, the Supreme Court's decision in Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), a decision not cited or discussed in either Baker or Schlitz. See also Monell v. Department of Social Servs., 436 U.S. 658, 701, 98 S.Ct. 2018, 2041, 56 L.Ed.2d 611 (1978) (holding that "municipal bodies sued under § 1983" for constitutional violations "cannot be entitled to ... absolute immunity"). In Owen, the Court held that a municipality is not entitled to qualified immunity under section 1983 based upon the good faith of its officers or agents. See id. 445 U.S. at 638, 650, 100 S.Ct. at 1409, 1415. The Court first surveyed the common law and found that there was "no [common law] tradition of [qualified] immunity for municipal corporations" based upon the good faith of their officers or agents. Id. at 638, 100 S.Ct. at 1409. It then considered whether Congress intended to import into section 1983 either of the municipal immunities that were recognized at common law. It concluded that Congress could not have intended either the common law municipal immunity for "governmental" (as distinguished from proprietary) activities or the immunity for "discretionary" or "legislative" (as distinguished from ministerial) activities to limit municipal liability under section 1983. See id. at 644-50, 100 S.Ct. at 1412-15.
 
 
 15
 As to governmental immunity, which it noted was grounded in the doctrine of sovereign immunity, the Court concluded that "[b]y including municipalities within the class of 'persons' subject to liability for violations of the federal Constitution and laws, Congress ... abolished whatever vestige of the State's sovereign immunity the municipality possessed." Id. at 647-48, 100 S.Ct. at 1413-14. As to discretionary or legislative immunity, which it explained was grounded in concerns for the separation of powers, it concluded that because "a municipality has no 'discretion' to violate the Federal Constitution," review of a municipality's conduct under section 1983 does not interfere with the municipality's policy discretion, which the immunity was accorded to preserve. Id. at 649, 100 S.Ct. at 1414. Having found that there was no tradition of municipal immunity based upon the good faith of the municipality's officers and that neither of the broader municipal immunities for which there existed a common law tradition could support an immunity of the kind sought by the City of Independence, the Court rejected the City's immunity defense.
 
 
 16
 The reasoning of the Court in Owen would appear to apply with equal force to a claim of absolute municipal immunity based upon the testimonial privilege of the municipality's officers and agents. There is no evidence that such an absolute immunity existed at common law. (Even if there were, presumably this court could not recognize it, given the Supreme Court's holding in Monell that there is no absolute municipal immunity under section 1983.) And the "governmental" and "legislative" municipal immunities discussed in Owen that were recognized at common law could not serve as foundations for recognition of such an absolute immunity, for the same reasons that they could not support the qualified immunity at issue in Owen.[1] Accordingly, I cannot join part II of Judge Hall's opinion.
 
 
 17
 Rather than hold, as Judge Hall would, that Baker and Schlitz extend to constitutional claims against a municipality under section 1983, and thus that the doctrine of legislative immunity insulates from inquiry discussions that occur before an official even becomes a legislator, I would decide this case on the narrow ground that Hollyday simply has failed to meet her burden under Fed.R.Civ.P. 56 to present a question of material fact as to an essential element of her claim.
 
 
 18
 To prevail against the County on her First Amendment claim, Hollyday must prove that the County abolished her position pursuant to an "officially adopted" decision to abolish through legislation positions held by persons with political affiliations different from that of the County administration. See Monell, 436 U.S. at 690, 98 S.Ct. at 2035 ("[T]he action that is alleged to be unconstitutional action [must] implement[ ] or execute[ ] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the local government's] officers." (emphasis added)); accord, e.g., City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1988); City of St. Louis v. Praprotnik, 485 U.S. 112, 121, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988); Pembaur v. City of Cincinnati, 475 U.S. 469, 477-78, 106 S.Ct. 1292, 1297, 89 L.Ed.2d 452 (1986); City of Oklahoma City v. Tuttle, 471 U.S. 808, 818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985). The only County officers with the authority to "establish[ ] final policy with respect to the subject matter in question" are the commissioners themselves. Pembaur, 475 U.S. at 483-84, 106 S.Ct. at 1300 (plurality opinion). Under the established law of this circuit, however, as both Judges Hall and Butzner agree, the commissioners--and presumably their legislative aides, see Gravel v. United States, 408 U.S. 606, 616-22, 92 S.Ct. 2614, 2622-25, 33 L.Ed.2d 583 (1972)--cannot be required to testify as to their intentions, objectives, and motivations during the time that they served as County commissioners.[2]
 
 
 19
 The only other evidence proffered by Hollyday is of conversations that occurred among the commissioners-elect and between them and the transition manager and personnel director prior to the time the commissioners-elect became officers of the County. I believe that this evidence, assuming it is relevant at all, is alone insufficient to create a question of material fact as to whether abolition of Hollyday's position was effected pursuant to an official decision of the County to abolish positions held by individuals with contrary political views because, at the time of these conversations, none of the defendants were officers empowered to adopt and implement through legislation an official County decision to discriminate on the ground of political affiliation. See, e.g., Jett v. Dallas Indep. School Dist., 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989); Praprotnik, 485 U.S. at 127, 108 S.Ct. at 926 (plurality opinion) ("[T]he authority to make municipal policy is necessarily the authority to make final policy."); id. at 132, 108 S.Ct. at 928 (Brennan, J., concurring in the judgment); Pembaur, 475 U.S. at 483-84, 106 S.Ct. at 1300 (plurality opinion); Dotson v. Chester, 937 F.2d 920, 924 (4th Cir.1991); Crowley v. Prince George's County, 890 F.2d 683, 685-87 (4th Cir.1989); cf. Baker, 894 F.2d at 681 (declining to "permit the advice or recommendations of low-level personnel to constitute the basis for" a local government's liability for age discrimination). This evidence, given Monell 's requirement that the challenged action have been taken pursuant to an official decision of the County, is no more sufficient as a matter of law to withstand summary judgment than would be evidence that the defendants, when members of the Young Democrats, promised to abolish any position in County government held by a Republican, if they were ever elected to the County's board of commissioners.
 
 
 20
 Because in my view Hollyday was required to, but did not, present at least some evidence from the time when the individual defendants were County commissioners that they acted with impermissible motives, I would, on the assumption that legislative abolition of a position can ever be actionable,[3] affirm the district court's grant of summary judgment on the narrow ground that Hollyday failed to meet her evidentiary burden under Fed.R.Civ.P. 56. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 
 BUTZNER, Senior Circuit Judge, dissenting:
 
 21
 I respectfully dissent, because the defense of legislative immunity is not a bar to Mary Jane Hollyday's cause of action that is based on the First and Fourteenth Amendments. While the county commissioners may be immune from the imposition of personal liability and from testifying, legislative immunity does not bar a cause of action against the county or its officers performing executive functions. Nor does legislative immunity preclude testimony from persons who subsequently became commissioners or officials about events occurring prior to their present status.
 
 
 22
 * Ms Hollyday is a well-known, active member of the Republican Party. Her complaint alleges that
 
 
 23
 she had been a Vice Chairman of the Buncombe County Republican Party, Republican candidate for the North Carolina Senate from the 26th District, Vice Chairman of the North Carolina Republican Party, a delegate to the 1976 Republican National Convention, an Alternate Delegate to the 1980 Republican National Convention, a delegate to the 1984 Republican National Convention, and a statewide cochairman of the campaign of the late Republican United States Senator John East.
 
 
 24
 She also had served as staff director for Senator East.
 
 
 25
 Ms Hollyday's supervisors considered her performance as manager of the assessor's office to be excellent. Her boss told the commissioners that although she carried "political baggage," her performance was good and she had not used politics in her job. Nevertheless, shortly after an election in which Democrats won a majority of the seats on the County Board of Commissioners, the commissioners eliminated her position. The commissioners then sought to hire an assistant assessor. But the county's personnel plan entitled Ms Hollyday to preference for that position. Confronted by Ms Hollyday's entitlement, the commissioners abolished the position of assistant assessor.
 
 
 26
 It is unnecessary for the purpose of this dissent to recount the evidence and the reasonable inferences that can be drawn from the evidence on which Ms Hollyday relies. It is sufficient to note that a genuine issue of material fact exists concerning her claim of a constitutional tort and the county's claim that efficiency and economy dictated the elimination of the two positions.
 
 II
 
 27
 The constitutional predicate for Ms Hollyday's cause of action is derived from Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980): "[T]he First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved." Rutan v. Republican Party, 497 U.S. 62, 110 S.Ct. 2729, 2731-32, 111 L.Ed.2d 52 (1990). Branti prohibited the discharge of two assistant public defenders because of their political affiliation. Of significant import to Ms Hollyday's claim is the fact that the county legislators instigated the discharges in Branti. Also, in Branti the Court relied in part on the discharge of other public defenders because of their political affiliation as relevant evidence concerning the discharge of the two plaintiffs. 445 U.S. at 509-10, 100 S.Ct. at 1290. Similarly, Ms Hollyday relies on evidence that the commissioners swept out of office other Republican employees at about the same time that they terminated her employment.
 
 
 28
 Rutan extended the protection that the First Amendment affords public employees to political patronage practices involving promotion, transfer, recall, and hiring. 110 S.Ct. at 2732. Rutan lends support to the aspect of Ms Hollyday's claim concerning the refusal to hire her for the assistant assessor's position. Moreover, this incident is relevant evidence with respect to her claim about the manager's position.
 
 
 29
 Although Elrod and Branti dealt with discharges, I believe that the county cannot avoid their constitutional mandate by the simple expedient of eliminating Ms Hollyday's job. Elimination of a job for purposes of political discrimination is tantamount to discharge. Infringement of constitutional rights by deception cannot cloak unlawful acts. The Supreme Court recently reiterated: "What the First Amendment precludes the government from commanding directly, it also precludes the government from accomplishing indirectly." Rutan, 110 S.Ct. at 2738-39.
 
 
 30
 Whether Ms Hollyday can ultimately prevail is not an issue at this stage of the proceedings, and on that subject I express no opinion. She has, however, established a prima facie case of a constitutional tort. This brings us to the defense of legislative immunity.
 
 III
 
 31
 The county bases its defense of legislative immunity on Schlitz v. Virginia, 854 F.2d 43 (4th Cir.1988), and Baker v. Mayor and City Council of Baltimore, 894 F.2d 679 (4th Cir.1990). But these cases dealt with public employees' claims of violation of the Age Discrimination in Employment Act. They are not applicable to a local government's violation of the United States Constitution.
 
 
 32
 In Owen v. City of Independence, 445 U.S. 622, 657, 100 S.Ct. 1398, 1418, 63 L.Ed.2d 673 (1980), the Court held that "municipalities have no immunity from damages liability flowing from their constitutional violations." Owen dealt with the claim of a former Chief of Police, whom the city manager summarily discharged after the city council adopted a resolution excoriating him and directing the city manager to take appropriate action. In a suit charging violation of his constitutional rights to procedural and substantive due process, the former Chief of Police named as defendants the city, the city manager who fired him, and the city council in their official capacities. The district court entered judgment for the defendants, and the court of appeals affirmed on the ground that the defendants were entitled to qualified immunity. The Supreme Court reversed because the city was not immune.
 
 
 33
 Owen vindicated violations of the Fourteenth Amendment, but its principles are applicable to a violation of the First Amendment. In Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), the plaintiff complained that a legislative committee violated his First Amendment right of free speech. The Court held that by enactment of the predecessor of 42 U.S.C. § 1983 Congress did not intend to abrogate the immunity of state legislators, which had its origins in 16th and 17th century English law and had been long recognized by the states for sound reasons of policy. 341 U.S. at 376, 71 S.Ct. at 788. Tenney, however, did not hold that immunity of the legislators validated their legislative action. 341 U.S. at 379-81, 71 S.Ct. at 789-91 (Black, J., concurring).
 
 
 34
 Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), extended legislative immunity to regional legislators charged with a constitutional tort, but it did not confer their immunity on the agency on which they served.
 
 
 35
 In Lake Country Estates the Court noted that it was not deciding whether persons performing legislative functions at the local level should be granted immunity. 440 U.S. at 404 n. 26, 99 S.Ct. at 1178 n. 26. Nevertheless, for the purpose of this appeal, I assume that county commissioners are entitled to legislative immunity even though they are charged with a constitutional tort. The commissioners' immunity, however, does not absolve the county from liability, if any, for the conduct of the commissioners. This much is clear from Tenney, Owen, and Lake Country Estates.
 
 
 36
 The district court also conferred legislative immunity on the county's director of personnel and on a Democratic campaign worker who became the volunteer manager of transition from the Democratic to the Republican commissioners. After the newly elected Democratic commissioners were seated, they made the volunteer manager a paid employee. The district court's grant of immunity to these individuals is much too broad. It must be confined within the bounds delineated in several Supreme Court cases.
 
 
 37
 In Gravel v. United States, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972), a legislative aide was granted immunity from testifying before a grand jury only to the same extent that the legislator would be immune. The aide was denied immunity with respect to acts that were not of a legislative character. 408 U.S. at 625, 92 S.Ct. at 2627. Similarly, in Dombrowski v. Eastland, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967), the Court reiterated that legislators engaged in the sphere of legislative activity are immune not only from the results of legislation, but also from the burden of defending themselves. This doctrine, the Court explained, is less absolute for, though applicable to, legislative employees. 387 U.S. at 85, 87 S.Ct. at 1427. Therefore an aide to a legislator was not entitled to summary disposition of a complaint when controverted evidence was offered to show that he collaborated in an alleged violation of the Fourth Amendment. Under these circumstances, the Court held that the plaintiff was entitled to a trial. 387 U.S. at 84, 87 S.Ct. at 1427.
 
 
 38
 The director of personnel and the transition manager are entitled to immunity from testifying about the commissioners' statements in the executive meetings of the board, the commissioners' motives, and communications of a legislative nature that they had with the commission. Ms Hollyday tendered evidence, however, that during the month between the elections and the swearing in of the new commissioners, the man who became transition manager had access to all personnel files and conferred with one or more of the successful candidates before they took office. There was discussion of personnel at this time. During this period the conferees undertook to create the job of transition manager and to hire the volunteer as soon as the new commissioners took office. The doctrine of legislative immunity does not preclude relevant evidence of matters discussed at these conferences nor does it immunize the testimony of the conferees, even though subsequently they became commissioners and the volunteer became an employee.
 
 
 39
 In Kilbourn v. Thompson, 103 U.S. 168, 200-05, 26 L.Ed. 377 (1880), legislators who unconstitutionally punished Kilbourn for contempt were held to be immune. Nevertheless, the sergeant-at-arms who arrested Kilbourn pursuant to a legislative resolution, was not immune in an action for damages.
 
 
 40
 Similarly, in Powell v. McCormack, 395 U.S. 486, 501-06, 89 S.Ct. 1944, 1953-56, 23 L.Ed.2d 491 (1969), legislative immunity did not bar judicial review of the action of the sergeant-at-arms of the House of Representatives who withheld a congressman's pay in accordance with an unconstitutional resolution of the House.
 
 
 41
 These cases demonstrate that the director of personnel, who claims he took no part in the decision to terminate Ms Hollyday, does not have legislative immunity. He executed the procedures to accomplish her termination. His position is similar to that of the sergeants-at-arms in Kilbourn and Powell, and his lack of legislative immunity enables Ms Hollyday to obtain judicial review of her termination. Liability for his action can be attributed to the county, not by the doctrine of respondeat superior, but rather because the commissioners, at whose behest he acted, are the policy-making officials of the county. Monnell v. New York City Dep't of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that action could be brought against city for genderbased discrimination that reflected official policy).
 
 
 42
 Like the plaintiff in Dombrowski, the controverted evidence entitles Ms Hollyday to have a jury consider her case. Because the district court summarily dismissed her complaint, I respectfully dissent.
 
 
 
 [1]
 The district court also granted summary judgment to defendant Thornberry, the County personnel officer, on the alternative ground of qualified immunity. I would hold that affirmance on the grounds of legislative immunity obviates the need to reach this alternative basis
 
 
 [2]
 Hollyday also appeals the district court's refusal to strike the magistrate judge's order denying a motion to amend the complaint. The original complaint comprises 22 pages containing 80 paragraphs; the proposed amendment would have added seven pages containing 23 additional paragraphs. Aside from the obvious contravention of Fed.R.Civ.P. 8(a)(2) ("a [complaint] shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief ..."), there is no mention of how the amendment could have helped Hollyday avoid summary judgment and the Rule 12(b)(6) dismissal. Under these circumstances, we find no abuse of discretion
 
 
 [1]
 The Supreme Court has already intimated that a regional agency would not be immune from liability for damages caused by enactment of unconstitutional legislation simply because the individual regional legislators, who presumably have a greater entitlement to legislative immunity than municipal legislators, see note 2 infra, would be immune for their role in enacting the legislation. See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 405 n. 29, 99 S.Ct. 1171, 1179 n. 29, 59 L.Ed.2d 401 (1979) ("If the [regional legislators] have enacted unconstitutional legislation, there is no reason why relief against [the regional agency] itself should not adequately vindicate [the plaintiff's] interests."), quoted in Owen, 445 U.S. at 653 n. 37, 100 S.Ct. at 1417 n. 37; see also Tenney v. Brandhove, 341 U.S. 367, 379, 71 S.Ct. 783, 789, 95 L.Ed. 1019 (1951) (Black, J., concurring) ("It is not held that the validity of legislative action is coextensive with the personal immunity of the legislators."). And this court has specifically rejected as "unfounded" the notion that a "County derive[s] immunity from the legislative immunity claimed by" individual legislative officers. Scott v. Greenville County, 716 F.2d 1409, 1422 (4th Cir.1983); see also Bruce v. Riddle, 464 F.Supp. 745, 749 (D.S.C.1979) (permitting a suit alleging constitutional violations to proceed against a county as "not inconsistent with the ... legislative immunity" of county officials), aff'd on other grounds, 631 F.2d 272 (4th Cir.1980)
 
 
 [2]
 See Baker, 894 F.2d at 682; Schlitz, 854 F.2d at 45; cf. Bruce v. Riddle, 631 F.2d 272, 279 (4th Cir.1980) (immunity from liability). As a panel of this court, we are bound by these prior decisions. See, e.g., Capital Produce Co. v. United States, 930 F.2d 1077, 1079 (4th Cir.1991). The Supreme Court, however, has never addressed the question of whether local officials are entitled to legislative immunity. See Spallone v. United States, 493 U.S. 265, 278, 110 S.Ct. 625, 633, 107 L.Ed.2d 644 (1990); Lake Country Estates, 440 U.S. at 404 n. 26, 99 S.Ct. at 1178 n. 26
 
 
 [3]
 Judge Butzner would extend the Supreme Court's decisions in Rutan v. Republican Party, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and hold that a municipality is liable under section 1983 for the facially neutral legislative abolition of a government position if the purpose of abolishing the position was to rid the government of the incumbent because of her contrary political views. Contra Pieczynski v. Duffy, 875 F.2d 1331, 1333 (7th Cir.1989); Fraternal Order of Police Hobart Lodge # 121 Inc. v. City of Hobart, 864 F.2d 551, 554-57 (7th Cir.1988); cf. Rateree v. Rockett, 852 F.2d 946, 950-51 (7th Cir.1988); Drayton v. Mayor & Council, 699 F.Supp. 1155, 1157 (D.Md.1988), aff'd without opinion, 885 F.2d 864 (4th Cir.1989). Because I conclude, contrary to Judge Butzner, that Hollyday's proffered evidence is insufficient to satisfy her burden under Rule 56, I need not and do not reach this significant constitutional question