Joseph Michael Donovan
COOPER, Plaintiff,

v.

LEE COUNTY BOARD OF
SUPERVISORS, et al.,
Defendants.

No. CIV. A. 96–264–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

June 18, 1998.

Gerald L. Gray, Law Firm of Gerald Gray, Clintwood, VA, Roy Mark Jessee, Mullins, Thomason & Harris, Norton, VA, for Joseph Michael Donovan Cooper, plaintiff.

William Elbert Bradshaw, Bradshaw & Bradshaw, Big Stone Gap, VA, Steven R. Minor, Elliott, Lawson & Pomrenke, Bristol, VA, for Lee County Board of Supervisors, defendant.

Terry Gene Kilgore, Gate City, VA, Steven R. Minor, Elliott, Lawson & Pomrenke, Bristol, VA, Robert B. Hines, II, Law Office of H. Ronnie Montgomery, Jonesville, VA, for Marty Jay Hensley.

Steven R. Minor, Elliott, Lawson & Pomrenke, Bristol, VA, for James William Sutphin, III, Donald Merle Williams, Timothy Wayne Belcher, defendants.

## OPINION AND ORDER

JONES, District Judge.

In this opinion and order, I resolve certain post-judgment motions by the defendant, following a jury trial and final judgment granting equitable relief and compensatory damages to the plaintiff.

### I. Background.

The plaintiff, Joseph Michael Donovan Cooper, a public employee, claimed that the defendant, Lee County Board of Supervisors, the governing body of Lee County, Virginia, violated his constitutional rights by voting to abolish his health, life insurance, and retirement benefits.[1] At trial, a jury found by its verdict that Cooper had proved by a preponderance of the evidence that his political affiliation was a substantial or motivating factor in the termination of his benefits, and

---

**1.** I earlier dismissed the individual members of the board of supervisors from the action on the ground of legislative immunity. *Cooper v. Lee County Bd. of Supervisors,* 966 F.Supp. 411, 415 (W.D.Va.1997). *See Bogan v. Scott–Harris,* —— U.S. ——, ——–——, 118 S.Ct. 966, 972–73, —— L.Ed.2d ——, ——–—— (1998). I also granted the individual board members a testimonial privilege relating to their motives for voting as they did, *Cooper,* 966 F.Supp. at 416, and none of them submitted to discovery depositions or testified at trial.

that the defendant had not proved that it discontinued Cooper's benefits for any reason other than his political affiliation. The jury awarded compensatory damages in the amount of $85,000.

The question of equitable relief was thereafter submitted to the court and in a final judgment dated March 9, 1998, judgment was entered on the jury's verdict and the defendant was directed to reinstate the plaintiff's benefits.

The defendant has timely filed a renewed motion for judgment as a matter of law, a motion for a new trial or remittitur, and a motion to alter or amend the judgment. Fed.R.Civ.P. 50(b), 52(b) and 59(a). The motions have been fully briefed and are ready for decision.

## II. Standard for Judgment as a Matter of Law.

The defendant has renewed its motion for judgment as a matter of law, initially made at the close of all of the evidence at trial. The question is whether there was a legally sufficient basis for a reasonable jury to find for the plaintiff on the issues contested. Fed. R.Civ.P. 50(a). I can only grant this motion "if, viewing the evidence most favorable to the non-moving party and drawing every legitimate inference in that party's favor," I determine that "the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party." *Tools USA and Equip. Co. v. Champ Frame Straightening Equip., Inc.*, 87 F.3d 654, 656–57 (4th Cir.1996) (citations omitted).

■ While the standard for consideration of a rule 50(a) (pre-verdict) motion and a rule 50(b) (post-verdict) motion is technically identical, the motions are practically distinguished by the "fundamental principle . . . that there must be a minimum of judicial interference with the jury." 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2524, at 261 (2d ed.1995). In short, the defendant bears a "heavy burden" in establishing that the evidence is in-

sufficient to uphold the jury's verdict. *Price v. City of Charlotte*, 93 F.3d 1241, 1249 (4th Cir.1996) (quoting *Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.*, 41 F.3d 182, 186–87 (4th Cir.1994)).

## III. Can the Withdrawal of Benefits Ever Be a Constitutional Violation?

■ The defendant contends that the termination of the plaintiff's benefits does not fall within the analysis employed in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), because the Board of Supervisors is not Cooper's employer and thus is legally unable to coerce him as a result of his political beliefs. Since the Board cannot fire Cooper, it argues, it may exercise such political retaliation as it desires, so long as it does not punish him for the actual content of his speech, as opposed to his political affiliation.

I am unpersuaded. While it correct that Cooper makes no claim here involving the speech content of any political activity,[2] I believe that the adverse employment action taken against him by the Board, assuming that it was motivated by his political affiliation, is prohibited under the principles of *Elrod* and *Branti*.

Cooper is a member of the staff of the Lee County commissioner of revenue, an independent "constitutional" officer—meaning that his office and authority derive from the Virginia constitution. Va. Const. art. VII, § 4. The commissioner of revenue, like the Lee County sheriff, treasurer, clerk of court, and Commonwealth's attorney, hire and direct their own staffs. Under the current complex system of funding of these local offices, however, the county's governing body pays the salaries and expenses of these officials and staff from local taxes revenues, but is periodically reimbursed by the state, from state funds. Moreover, while a state agency—the State Compensation Board—fixes the number of positions and salaries for constitutional

---

**2.** Interference with the exercise of speech by a public employee is analyzed under different standards than retaliation for political affiliation. *See Connick v. Myers*, 461 U.S. 138, 103 S.Ct.

1684, 75 L.Ed.2d 708 (1983); *Jenkins v. Medford*, 119 F.3d 1156 (4th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 881, 139 L.Ed.2d 869 (1998).

officer staff, the local county governing body may contest these amounts.

In *Rutan v. Republican Party,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Supreme Court extended *Elrod–Branti* to adverse employment actions other than patronage firings. The Court rejected the argument that employment retaliation less than termination "do[es] not chill the exercise of protected belief and association by public employees." *Id.* at 73. To the contrary, employees who have been subjected to such retaliation as denial of promotion, transfer, or recall suffer "significant penalties ... for the exercise of rights guaranteed by the First Amendment." *Id.* at 74.

I cannot distinguish, in any principled sense, the denial of the valuable benefits here from the denial of a salary increase resulting from a promotion, as prohibited in *Rutan.* Both detriments make it more likely, in the reasoning of *Rutan,* that the public employee will conform his behavior to the political will of the dominant governmental authority. Under these circumstances, "[t]he First Amendment prevents the government, except in the most compelling circumstances, from welding its power to interfere with its employees' freedoms to believe and associate, or not to believe and not associate." *Id.* at 76.

■ While the defendant Board of Supervisors does not exercise all of the powers of a common law employer with respect to the plaintiff, it did exercise one aspect of that relationship—the ability to decide whether or not he received benefits. Such benefits are a powerful incentive in modern employment, and are as likely as any other term or condition of employment to make the job a worthwhile one. Moreover, the Supreme Court has made it clear that a strict employment relationship is unnecessary for the application of *Elrod–Branti.* In addition to public employees, the principles of those cases also protect independent contractors to government. *Board of County Comm'rs v. Umbehr,* 518 U.S. 668, 116 S.Ct. 2342, 2348, 135 L.Ed.2d 843 (1996)

■ The defendant contends that its termination of benefits would be unlikely to successfully coerce the plaintiff because he knew that his job itself was owed to Tommy Livesay, the commissioner of revenue and his fellow partisan, and not to the opposing party majority on the Board of Supervisors. That argument misses the point. It is not necessary that the plaintiff was likely, as a result of the retaliation, to *change* his political affiliation; rather, it is only necessary under *Elrod–Branti* that his freedom to participate in political association and activity be interfered with. No proof is necessary in a particular case that public employees were "coerced into changing, either actually or ostensibly, their political allegiance." *Rutan,* 497 U.S. at 71, 110 S.Ct. 2729 (quoting *Branti v. Finkel,* 445 U.S. 507, 517, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)).

In the present case, the plaintiff's evidence showed that he had been a constant target of the defendant's actions since the new majority first took office, leading finally to the termination of benefits. These acts included efforts to contest the State Compensation Board's allowance of his position, as well as attempts to remove him from the office space he occupied. Assuming that political, rather than innocent, motivation fueled these efforts, it is not unreasonable to believe that a person in the plaintiff's position might think twice before again publically supporting candidates opposed to the majority's party, even though he might continue his nominal membership in the other party. Political activity lies along a broad continuum of intensity, from silent party membership to public campaigning to actual candidacy. Suppression of the degree of activity is as destructive of First Amendment rights as is the interference with political association itself.

Moreover, a central assertion in the plaintiff's case is that he was treated differently than a staff member of a Republican constitutional officer. The Board majority's award of benefits to its fellow party member, coupled with the denial of like benefits to the plaintiff, is pure and simple the operation of a patronage system prohibited by *Elrod–Branti.*

Finally, the defendant argues that *Elrod–Branti–Rutan* should not be extended to the present situation, since those holdings are

"anti-democratic" and mistaken. (Def.'s Memo. in Supp. Post–J. Mots. 9.) Of course, unless those cases can be distinguished from this one, I am bound by them, and may not substitute my personal view of the proper public policy.[3]

### IV. Is the Plaintiff Barred by State Law from Receiving Benefits?

■ The defendant contends that state law precludes Cooper from receiving the benefits denied him by the Board of Supervisors, and thus he has no federal claim resulting from that denial.

The short answer to this contention is that the defendant itself has established, in its post-trial submissions, that the determination of an employee's status, upon which the question of eligibility for benefits revolves, is within the discretion of the local government body. As set forth in the court's opinion as to the reinstatement of Cooper's benefits, the defendant's discretion was found by the jury to have been improperly motivated.[4] Thus, the fact that the Board of Supervisors might have changed its local policy and removed Cooper's benefits for an innocent reason is no bar to the jury's verdict.

### V. Does the Plaintiff's Claim Require an Improper Inquiry into Legislative Motives?

■ The defendant contends that it is impermissible in this case to inquire at all into the motivations of the Board's action in terminating the plaintiff's benefits, since it was a legislative act, not illegal on its face.

The Fourth Circuit has held that existing Supreme Court precedent forecloses immunity for local legislative bodies. *See Alexander v. Holden,* 66 F.3d 62, 68 (4th Cir.1995); *Berkley v. Common Council of City of Charleston,* 63 F.3d 295, 298–99 (4th Cir. 1995). To forbid any determination of the motivation for the enactment of legislation would be in effect to grant the locality complete immunity for the illegal results of its legislation. While judicial inquiry into legislative motives ought to be circumspect, it is clearly available here, where the legislators themselves preserved their testimonial immunity, the legislation had a clearly disparate impact, and it was enacted in the context of discriminatory behavior. *See Goldberg v. Whitman,* 743 F.Supp. 943, 952 (D.Conn. 1990), *aff'd sub nom. Goldberg v. Town of Rocky Hill,* 973 F.2d 70 (2d Cir.1992).

The Fourth Circuit has not precluded evidence of legislative motive in political affiliation cases, at least where individual legislators are not required to testify. *See Hollyday v. Rainey,* 964 F.2d 1441, 1446 (4th Cir.1992) (Luttig, J., concurring in part). Thus, in the present case, where the dangers otherwise inherent in examining legislative motivation are minimized, I find no difficulty in holding the locality liable for its legislative act.[5]

### VI. Was the Evidence Sufficient as to Causation?

■ The defendant argues that the plaintiff failed to prove that his political affiliation was a motivating or substantial cause of the termination of benefits by a majority of the

---

**3.** In his dissent in *Rutan,* Justice Scalia cogently expressed the reasons he believed that *Elrod–Branti* were wrongly decided, including a reason certainly troubling to any federal judicial officer called upon to decide a political patronage case:

> [I]f there is any category of jobs for whose performance party affiliation is not an appropriate requirement, it is the job of being a judge, where partisanship is not only unneeded but positively undesirable. It is, however, rare that a federal administration of one party will appoint a judge from another party. And it has always been rare. Thus, the new principle that the Court today announces will be enforced by a corps of judges (the Members of this Court included) who overwhelmingly owe their office to its violation. Something must be wrong here, and I suggest it is the Court.

*Rutan,* 497 U.S. at 92–93, 110 S.Ct. 2729 (Scalia, J., dissenting) (citation omitted).

**4.** The defendant has also moved the court to alter or amend its judgment reinstating benefits. The motion essentially seeks a reconsideration of the court's opinion dated March 7, 1998, that such reinstatement is justified. For the reasons previously stated in that opinion, the motion will be denied.

**5.** The defendant cites language in *Moses v. Town of Wytheville,* 959 F.Supp. 334, 336 n. 4 (W.D.Va. 1997), in support of its argument. In *Moses,* however, the legislation was adopted for reasons unrelated to the plaintiff, unlike the present situation, where it is clear that Cooper was the target of the measure.

Board of Supervisors. This argument has two parts: (1) that the plaintiff has not proved that a majority of the Board knew of the plaintiff's political affiliation and (2) that in any event, he has not proved that a majority acted on the basis of this knowledge in regard to the plaintiff's benefits.

I will deny the motion. For the reasons demonstrated in the plaintiff's briefs in opposition to the motion, there was sufficient circumstantial evidence showing the unlawful motivation of a majority of the Board of Supervisors. Pretext is a component of circumstantial proof of illegal motivation, and the Board's demonstrably false and inconsistent reasons for its actions surely was a factor in the jury's decision in this case. *See Acevedo–Diaz v. Aponte*, 1 F.3d 62, 72 (1st Cir.1993) (holding that jury could reasonably find that "shifting justifications for [plaintiff's] dismissal amounted to pretextual posturing.")

Of course, there is an innocent rationale for distinguishing between the Board's hostile treatment of the plaintiff and its solicitous attitude toward its fellow political adherent who worked for the Commonwealth's attorney. The Board's difficulty is that its present benign reason for its actions is largely belied by its pre-litigation efforts to explain its decisions.

Similarly, while the plaintiff had no direct evidence that a majority of the Board knew of his political affiliation, the strong circumstantial evidence of his active political life in various public forums, in this small rural county, supports the jury's verdict.

### VII. Was the Jury Properly Instructed as to the Burden of Proof?

The defendant seeks a new trial on the ground that the court erroneously instructed the jury as to the proper burden of proof. The decision to grant or deny a new trial rests with the court's sound discretion, *Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.*, 41 F.3d 182, 186 (4th Cir.1994), and in ruling on such a motion, the proper inquiry is whether "the error is determined to have been prejudicial, based on a review of the record as a whole." *Sturges v. Matthews*, 53 F.3d 659, 661 (4th Cir.1995).

The jury was instructed in pertinent part as follows, in relation to the burden of proof:

In order for the plaintiff to prevail on his claim, you must find that plaintiff's protected First Amendment conduct; that is, the expression of political opinion, participation in political associations and engaging in political activities was a substantial factor or was a motivating factor to a majority of the Board of Supervisors in the decision to stop providing funding for the plaintiff's benefits.

. . . .

If you find that the plaintiff has met his burden of proof, then you must next determine whether the defendant has shown by a preponderance of the evidence that funding for the plaintiff's benefits would have been stopped by a majority of the Board of Supervisors even if the plaintiff's political activities, associations and expression of opinion had not been considered because the plaintiff is a temporary employee or because the action is necessary to be fair to all employees.

If the defendant shows by a preponderance of the evidence that the plaintiff would have been deprived of funding for his benefits in any event or, in other words, that it is not true that but for the plaintiff's politics he would have lost his benefits, then you should find for the defendant.

(Tr. II, 52–53.)

The defendant contends that the court should have instructed the jury that the plaintiff's initial burden was to prove that "but for" the plaintiff's political activity, the defendant would have not have terminated funding for his benefits. The defendant made the same objection at trial. (Tr. II, 10–11.)

The parties agree that the principles of *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), apply to the issue of causation in this case. Under *Mt. Healthy*, the burden must be placed upon the plaintiff to show that his protected conduct was a "substantial" or "motivating" factor in the defendant's decision. *Id.* at 287, 97 S.Ct.

568. Once the plaintiff carries this burden, the burden is upon the defendant to show that it would have reached the same decision even in the absence of the protected conduct. *Id.*

While the cases are not in complete harmony, it is clear that the "but for" test is applicable only if the plaintiff meets his initial burden. *See Hughes v. Bedsole,* 48 F.3d 1376, 1387 n. 11 (4th Cir.1995) ("This 'but for' causation is actually the test [defendants] would have to satisfy if [plaintiff] first proved that her free speech was a substantial or motivating factor behind her discharge."). *Accord Wagner v. Wheeler,* 13 F.3d 86, 90 (4th Cir.1993).[6]

Accordingly, the instruction objected to by the defendant was a correct statement of the law, and no new trial is warranted on this ground.

### VIII. Were the Compensatory Damages Awarded Excessive?

 The defendant contends that the jury's award of damages for emotional distress is without evidence to support it and judgment must be entered for the defendant. Alternatively, the defendant argues that the award is excessive and a remittitur should be ordered.[7] I find that while the evidence at trial justified the jury in awarding compensatory damages, the amount of the award was excessive.

The evidence before the jury that supported Cooper's damage claim is easily summarized.

In the plaintiff's evidence in chief, Mr. Livesay, Cooper's supervisor, testified that when Cooper learned about the Board's action terminating his benefits, Cooper was "disturbed" and "depressed" and indicated that he was going to quit his job. (Tr. I,

227–28.) In the damages portion of the trial, Cooper himself testified as to his reaction:

Q When the county cut off your benefits, your health benefits, what effect did that have on you?

A It was very stressful.

Q How was it stressful?

A I didn't know what was going to happen, you know. I could have been diagnosed with cancer or anything and it would just financially ruin my family.

Q Did that cause you stress?

A Yes. Very much.

. . . .

Q And these were—has the fact that you have not been able to get insurance for yourself or for your son caused you any problems?

A Yes, it has. It has worried me because I had a sister die with cancer, and I seen what effects, you know, financially that it had on her and it just terrified me. I have lost sleep over it, worried.

. . . . .

Q Has the decision to cut off your benefits affected you in any other way?

Has it caused you any embarrassment?

A Yes, it has. There has been several people in the community when, you know, when they would see me they would come up and they would ask me if I was still working. They thought I had been fired. And then some have asked me how many hours they had cut me back to. They thought they had cut me from full time to part time. That is embarrassing.

(Tr. I, 67–69.)

On cross examination, Cooper added that he had experienced difficulty breathing at times because he had been "stressed out"

---

6. It is not an entirely satisfactory formulation, to be sure. "The *Mt. Healthy* Court gives no real reason why it instituted the burden shift rather than simply requiring the plaintiff to prove 'but for' causation. The only rationale the Court provides is a passing reference to the need, in public employment cases, to strike a balance between the interests of the employee in being able to speak out on matters of public concern and the interests of the public employer in promoting the efficiency of its operations." Paul J. Gudel, *Be-*

*yond Causation: The Interpretation of Action and the Mixed Motive Problem in Employment Discrimination Law,* 70 Tex. L.Rev. 17, 36–37 (1991).

7. The rules permit a renewed motion for judgment as a matter of law to be submitted with an alternative motion for a new trial. Fed.R.Civ.P. 50(b).

(Tr. I, 72) but agreed that the stress and anxiety had not caused him to miss any work, or prevented him from doing things that he would normally do on a day-to-day basis. (Tr. I, 73.) He also agreed that he had not obtained any help or counseling for his condition. (*Id.*)

It is established that a plaintiff's testimony alone may support an award of compensatory damages for emotional distress, but that:

> [T]he testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a constitutional violation occurred supports an award of compensatory damages.

*Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1246, 137 L.Ed.2d 328 (1997).

▉ The defendant first argues that since Cooper did not testify that the source of his distress was the denial of his right to freedom of political association, as distinguished from his loss of benefits, he is not entitled to damages as a matter of law, citing *Price, supra.*

It is true that in *Price*, the Fourth Circuit held that under the circumstances of that case, emotional distress "must be attributed to the actual constitutional violation, as opposed to denial of the ultimate benefit." *Price*, 93 F.3d at 1246. However, the circumstances of *Price* show that the court simply meant that there are no presumed damages in section 1983 cases.

▉ *Price* involved a claim by white police officers who sought emotional distress damages over the city's racial preference policy in connection with promotions. As it turned out, the plaintiffs would not have been promoted regardless of the city's racially-discriminatory promotions practice, but claimed they had experienced emotional distress flowing from their realization that the city excluded them from consideration for promotion because of their race. *Price*, 93

F.3d at 1243–44. The city contended that since the racial policy did not affect these plaintiffs' chances of promotion, they were legally precluded from emotional distress damages. The Fourth Circuit disagreed, holding that so long as the plaintiffs could prove that their distress resulted from the invidious discrimination, they were eligible for damages. Since the plaintiffs in *Price* could not have shown denial of the "ultimate benefit," it is clear that the quoted language in *Price* is limited to situations where the constitutional deprivation exists independently of any direct effect on the benefits of employment.[8]

Assuming that adequate evidence is presented, the correct rule is that

> [c]ompensatory damages may be recovered in § 1983 actions for proven violations of constitutional right, but only for any actual harms caused by the violation and not the violation standing alone. Actual harms resulting from conduct that violated the right may include economic loss, physical injury, or emotional distress.

*Norwood v. Bain,* 143 F.3d 843, 855 (4th Cir.1998) (citations omitted).

In other words, emotional distress, like other damages, must be shown to have been proximately caused by the defendant's illegal actions.

Cooper presented evidence that he had suffered demonstrable emotional distress resulting from the defendant's withdrawal of his benefits. His distress, which was corroborated by another witness, was evidenced by his sleeplessness and difficulty breathing, and thus was not expressed in merely conclusory terms. Accordingly, the jury was justified in awarding compensatory damages.

▉ On the other hand, the amount of the award was excessive. Cooper admitted that he had sought no medical treatment or counseling, and that his day-to-day activities were unaffected by his emotional distress. Pursuant to Fed.R.Civ.P. 59(a), a damage award must be set aside if "[1] the verdict is against the clear weight of the evidence, or

---

8. Nominal damages only are available to those who suffer a violation of constitutional magnitude, but who are unable to demonstrate measurable monetary damages. *Price,* 93 F.3d at 1256; *See* Martin A. Schwartz and John E. Kirklin, 1C *Section 1983 Litigation* § 16.5 (3d ed.1997).

[2] is based upon evidence which is false, or [3] will result in a miscarriage of justice." *Cline v. Wal–Mart Stores, Inc.,* 144 F.3d 294, 305 (4th Cir.1998) (quoting *Aetna Cas. & Sur. Co. v. Yeatts,* 122 F.2d 350 (4th Cir. 1941)).

Here, the jury's award was against the clear weight of the evidence when compared with similar cases. For example, in *Cline v. Wal–Mart, supra,* the Fourth Circuit found an award of $117,500 to be excessive for emotional distress resulting from an illegal demotion and firing, and determined that "the outermost award that could be sustained" was $10,000. *Cline,* 144 F.3d at 306. In *Hetzel v. County of Prince William,* 89 F.3d 169, 173 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 584, 136 L.Ed.2d 514 (1996), the court instructed the district court to reconsider a jury award of $750,000 for emotional distress from sex and national origin discrimination, and recalculate it in the range of $9,000 to $15,000.

While the plaintiff in *Cline* suffered no physical symptoms from his distress, such as Cooper's sleeplessness and breathing difficulties, *Cline,* 144 F.3d at 305, the plaintiff in *Hetzel* had headaches, stress, trouble reading to her daughter and "family problems" as a result of the discrimination. *Hetzel,* 89 F.3d at 171. Accordingly, *Hetzel* provides a better measure of a permissible award than does *Cline,* although both indicate the excessiveness of the present verdict.

Under these circumstances, I find that the maximum award [9] permissible under the evidence is $15,000, and I will grant a new trial unless the plaintiff agrees to a remittitur of the verdict to that amount. There is no indication that the jury's determination of liability was influenced by its excessive verdict, and in accord with *In re Board of County Supervisors of Prince William County, Virginia,* 143 F.3d 835, 842 (4th Cir.1998), the new trial may be on all issues or limited to the issue of damages alone, at the election of the plaintiff.[10]

*IX. Conclusion.*

For the reasons stated, it is **ORDERED** as follows:

1. The renewed motion for judgment as a matter of law is denied;

2. The motion to alter or amend judgment is denied;

3. The motion for a new trial is granted, provided that if the plaintiff agrees to accept a remittitur of the jury's verdict to $15,000, the motion for a new trial is denied;

4. The plaintiff must file within ten (10) days his notice of acceptance or rejection of the remittitur, and if rejected, whether he elects a new trial on all issues or on the issue of damages alone; and

5. Upon the plaintiff's notice as described above, the court will enter such further orders as are necessary under the circumstances.

---

9. The standard that is least intrusive upon Seventh Amendment rights is to allow the largest award permissible under the evidence. *See Earl v. Bouchard Transp. Co.,* 917 F.2d 1320, 1328 (2d Cir.1990).

10. In its renewed motion for judgment as a matter of law, the defendant also asserted that the Eleventh Amendment barred any claim against it. It has not argued that ground in its briefs, and I assume it makes no serious claim in that regard. *See Beardsley v. Webb,* 30 F.3d 524, 532 (4th Cir.1994).