Regina ALEXANDER, Plaintiff–
Appellant,

v.

Kelly HOLDEN, Individually; Donald Shaw, Individually and in his official capacity as Brunswick County Commissioner; Jerry Jones, Individually and in his official capacity as Brunswick County Commissioner; Wayland Vereen, in his official capacity as Brunswick County Commissioner; Don Warren, in his official capacity as Brunswick County Commissioner; Tom Rabon, Sr., in his official capacity as Brunswick County Commissioner; Brunswick County, Defendants–Appellees.

North Carolina Academy of Trial Lawyers, Amicus Curiae.

No. 94–1810.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1994.

Decided Oct. 4, 1995.

**ARGUED:** Martha Anne Geer, Patterson, Harkavy & Lawrence, Raleigh, North Carolina, for Appellant. Reginald B. Gillespie, Jr., Faison & Fletcher, Durham, North Carolina, for Appellees. **ON BRIEF:** O. William Faison, Michael R. Ortiz, Keith D. Burns, Faison & Fletcher, Durham, North Carolina, for Appellees. Thomas M. Stern, Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, P.A., Chapel Hill, North Carolina, for Amicus Curiae.

Before ERVIN, Chief Judge, MICHAEL, Circuit Judge, and MESSITTE, United States District Judge for the District of Maryland, sitting by designation.

Reversed and remanded by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge MICHAEL and Judge MESSITTE joined.

## OPINION

ERVIN, Chief Judge:

The plaintiff, Regina Alexander, filed this action under 42 U.S.C. §§ 1981 and 1983, and North Carolina common law, alleging that Brunswick County and its commissioners discriminated against her based on her race and political affiliation and activities. The district court granted summary judgment in favor of the defendants, finding that they were entitled to legislative immunity, and dismissed plaintiff's federal claims. The court then declined to exercise supplemental pendent jurisdiction over the state claims and dismissed those without prejudice. Because we find that the actions of the County and the commissioners did not involve prospective, legislative-type decisions, and hence were administrative actions, we reverse the district court's grant of summary judgment on the basis that neither the County nor the commissioners are entitled to legislative immunity.

I.

Regina Alexander, a Democrat and an African–American, was hired by Brunswick County in 1975 as the secretary to the County Planner. The following year, she was promoted to the combined position of clerk to

the Board of Commissioners and secretary to the County Manager. In 1980, she became the full-time clerk. Over the next ten years, the Board retained her as clerk after each election of county commissioners.[1]

The Board of Commissioners consists of five commissioners, and the political composition of the Board has varied widely throughout the years. After the November 1990 election, newly elected commissioners Jerry Jones and Donald Shaw joined commissioner Kelly Holden on the Board to form a Republican majority. In December 1990, Jones successfully moved to postpone the reappointment of Alexander as Clerk. Jones claimed that he wanted to get to know Alexander, and Holden said that he wanted to see if Alexander could establish a good working relationship with the new commissioners. According to Alexander, Holden had previously stated that he did not want a black clerk appointed to the Board and that the Board needed to remove Alexander because of her political affiliation. After her reappointment was tabled, Alexander stated that Holden, Shaw, and Jones refused to work or communicate with her.

On June 17, 1991, Holden, Shaw, and Jones voted to eliminate the salary of the Clerk to the Board. Democratic commissioners Pinkerton and Rabon voted against the motion. The deputy clerk's position, however, was retained and the salary for it increased. Holden, Shaw, and Jones also voted to appoint the County Manager's Secretary as Clerk, essentially creating a new joint position of Clerk to the Board and Secretary to the County Manager. Kelly Barefoot, then Secretary to the County Manager, was asked to fill this new position. Barefoot is a white female whose family includes several prominent Republicans. Barefoot notified the commissioners that she could not fulfill the combined responsibilities without additional administrative help. In response, a new administrative assistant position was created. Subsequently, the administrative assistant became secretary to the County Manager and Ms. Barefoot essentially became a full-time clerk to the Board. The County Manager was never consulted, nor did he have any role in these decisions.

On January 20, 1993, Alexander brought suit against Holden, in his individual capacity; Shaw and Jones, in their individual and official capacities as County Commissioners; Wayland Vereen, Don Warren, and Tom Rabon, Sr., in their official capacities as County Commissioners; and Brunswick County, under 42 U.S.C. §§ 1981 and 1983 and North Carolina common law.[2] Alexander alleged that the defendants' actions were motivated by race and her political affiliation and activities.

Holden, Shaw, and Jones were each deposed, with their attorney present and without objection, in January of 1994. They extensively discussed their motives for eliminating the Clerk's salary, creating a new position, and selecting Barefoot, rather than Alexander, to fill that position. They indicated that their actions were based upon Alexander's performance, ability, and qualifications, the absence of a working relationship with Alexander, and their desire to save money and increase efficiency. They also stated that they simply felt more comfortable with Barefoot.

Both parties filed cross-motions for partial summary judgment. The district court granted Alexander's motion, finding that Alexander, as a Brunswick County employee, was not required to exhaust her administrative remedies, and that she was protected under the *Elrod–Branti* line of First Amendment jurisprudence. The court also found that defendants were not entitled to qualified immunity with respect to Alexander's First

---

1. N.C. Gen.Stat. § 153A–111 provides: "The board of commissioners shall appoint or designate a clerk to the board. The board may designate the register of deeds or any other county officer or employee as clerk.... The clerk shall serve as such at the pleasure of the board."

2. In November 1992, defendants Vereen, Warren, and Rabon were elected as Brunswick County Commissioners. Defendant Holden did not run for re-election. Presently, the Brunswick County Board of Commissioners is composed of Shaw, Jones, Vereen, Warren, and Rabon. Vereen, Warren, and Rabon were sued only in their official capacities so that Alexander could obtain complete equitable relief.

Amendment claims. The district court granted part of defendants' motion for summary judgment, dismissing Alexander's § 1981 claim.

The court requested additional briefing on Alexander's state law claims and the issue of sovereign immunity. In response, the defendants argued, for the first time, that Alexander's claims were completely barred under the doctrine of legislative immunity. The district court agreed, finding that the commissioners' action of eliminating the salary of the clerk to the Board was "uniquely legislative in nature." The court granted summary judgment to the commissioners and the County, finding that they were entitled to legislative immunity. This timely appeal followed.

## II.

■ A district court's decision to grant summary judgment is reviewed *de novo*, and our limited task on appeal is to determine whether the defendants are entitled to summary judgment on the basis of a legislative immunity defense. *Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir.1993). Summary judgment is appropriate when there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994).

■ We begin by determining whether the commissioners' actions were legislative or administrative in nature. *See Brown v. Griesenauer*, 970 F.2d 431, 436 (8th Cir.1992) ("[C]haracterization of [a] proceeding is a question of federal law for purposes of immunity analysis."); *Acevedo–Cordero v. Cordero–Santiago*, 958 F.2d 20, 23 (1st Cir.1992) ("An act of a legislative body may be characterized as administrative as a matter of law where the relevant underlying facts are uncontroverted."). Legislative immunity only attaches to legislative actions. *Roberson v. Mullins*, 29 F.3d 132, 134 (4th Cir.1994) ("Members of local governmental bodies are entitled to absolute legislative immunity from claims against them arising out of their actions in a 'legislative capacity.' "); *see also*

*Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir. 1980) ("County council members are absolutely immune when performing legislative acts."). Executive and administrative actions are not protected. *Rateree v. Rockett*, 852 F.2d 946, 950 (7th Cir.1988) (citing *Tenney v. Brandhove*, 341 U.S. 367, 379, 71 S.Ct. 783, 789–90, 95 L.Ed. 1019 (1951)); *see also Trevino By and Through Cruz v. Gates*, 23 F.3d 1480, 1482 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 327, 130 L.Ed.2d 286 (1994) ("[A]cts [of a local legislature] that are administrative or executive in nature receive less than absolute protection."). Local government bodies often undertake actions in different capacities, including executive, administrative, legislative, and even judicial. *See Scott v. Greenville County*, 716 F.2d 1409, 1423 (4th Cir.1983) (finding members of city council did not act in their legislative capacity, but rather in an executive capacity in issuing an order to the county planning commission to delay consideration of a building permit); *Forrester v. White*, 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988) (noting an "intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may … perform"); *Rateree v. Rockett*, 852 F.2d at 951 (distinguishing legislative acts from executive and judicial acts); *Trevino*, 23 F.3d at 1482 ("[N]ot all governmental acts by a local legislator, or even a local legislature, are necessarily legislative in nature.").

■ Under *Forrester v. White*, the functions of the commissioners determine whether their actions are legislative or administrative for purposes of immunity. 484 U.S. at 224, 108 S.Ct. at 542–43. It is often difficult to determine whether commissioners are functioning in a legislative capacity or an administrative capacity when their actions affect employment. As such, most budget decisions, by virtue of their impact on employment—by either creating or eliminating positions or by raising or lowering salaries, *Rateree*, 852 F.2d at 950—are generally decided by commissioners acting in a legislative capacity. *Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 302–03 (4th Cir. 1995) (en banc) (council's decision to deny salary increases was a legislative act);

*Baker v. Mayor and City Council of Baltimore,* 894 F.2d 679, 682 (4th Cir.), *cert. denied,* 498 U.S. 815, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990), *overruled by Berkley,* 63 F.3d at 303 ("Board's role in preparing the budget ordinance is a legislative one."); *Rateree,* 852 F.2d at 950 ("[B]udgetmaking is a quintessential legislative function."); *see also Roberson,* 29 F.3d at 134 (citing *Gravel v. United States,* 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972) and *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 504, 95 S.Ct. 1813, 1821–22, 44 L.Ed.2d 324 (1975)) (the actions of members of local governmental bodies are in a " 'legislative capacity' if they are an 'integral part' of legislative actions undertaken by the local governmental body."). On the other hand, legislator's employment and personnel decisions are generally administrative acts. *Smith v. Lomax,* 45 F.3d 402, 405 (11th Cir.1995); *Rateree,* 852 F.2d at 950. There may, however, be occasions when council members vote on employment decisions, in the context of budgetary discussions. *See Acevedo–Cordero,* 958 F.2d 20, 21–23 (1st Cir.1992) (denial of summary judgment appropriate when genuine issues of material fact exist regarding whether passage of an ordinance eliminating positions, yet identifying particular employees, was administrative or legislative act). Under these situations, "line drawing is often difficult," though necessary, since "it preserves the balance between inhibiting public officials from exercising their essential duties and protecting victims of wrongs committed by public officials." *Rateree,* 852 F.2d at 951; *see Brown,* 970 F.2d at 436 ("Unfortunately, the various activities of most government officials cannot be easily or definitively characterized as only administrative, legislative, or judicial.").

■ To facilitate the determination of whether an act is legislative or administrative, the First and Fifth Circuits adopted a test that focuses "on the nature of the facts used to reach the ... decision" and the "particularity of the impact of the state of action." *Acevedo–Cordero,* 958 F.2d at 23; *Hughes v. Tarrant County,* 948 F.2d 918, 921 (5th Cir. 1991). As the Eleventh Circuit noted, under this test, the key inquiry involves making a distinction between general and specific actions. *Smith,* 45 F.3d at 406. If the underlying facts "relate to particular individuals or situations" and the decision impacts specific individuals or "singles out specifiable individuals," the decision is administrative. *Acevedo–Cordero,* 958 F.2d at 23. On the other hand, the action is legislative if the facts involve "generalizations concerning a policy or state of affairs" and the "establishment of a general policy" affecting the larger population. *Id.; see also Trevino,* 23 F.3d at 1482 (noting that some courts define a legislative act as one "which applies generally to the community," as opposed to "one or a few individuals"); *Acierno v. Cloutier,* 40 F.3d 597, 610 (3rd Cir.1994) (one factor to be considered in determining whether an act is legislative or administrative is whether the decision affects a "single individual or a small number of people").

■ When a council eliminates an entire position, rather than merely terminating the employment of a specific individual, the counsel is regarded as having acted in a legislatively-protected manner. *Rateree,* 852 F.2d at 950. In *Rateree,* the court supported its position that the board's actions were legislative because "plaintiffs' positions were eliminated altogether and no one was hired to replace them." *Id.* On the other hand, in *Roberson,* we determined that the six members of the County Board who voted to terminate the plaintiff were not acting in their legislative capacity. 29 F.3d at 135. We emphasized that "[t]erminating a county employee [without removing the position itself] is plainly unrelated to the process of 'adopt[ing] prospective, legislative-type rules.' " *Id.; see Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal,* 865 F.2d 77, 79 (4th Cir.1989) (citing *Scott,* 716 F.2d at 1423 (local governmental body only acts in a legislative capacity when it engages in the process of "adopt[ing] prospective, legislative-type rules")); *see also Schlitz v. Virginia,* 854 F.2d 43, 46 (4th Cir.1988), *overruled by Berkley,* 63 F.3d at 303 (indicating that "a core legislative function ... involves deliberative and communicative processes"); *Trevino,* 23 F.3d at 1483 (finding defendants were not entitled to legislative immunity since their actions did not

involve "broad policy considerations"); *Acierno*, 40 F.3d at 611 (immunity attaches to actions that are "substantively" legislative, involving a policy-making or line-drawing, as well as "procedurally" legislative, i.e., "undertaken through established legislative procedures").

Recently, under facts similar to those in the present case, the Eleventh Circuit held that the Fulton County Board of Commissioners had engaged in an administrative act when it voted to replace its white female clerk with an African–American woman. *Smith*, 45 F.3d at 406. As a result of the board's failure to reappoint the plaintiff after her term had expired, she brought suit against board members and the county. *Id.* at 403. The *Smith* court found that the board's decision had not been general in nature, but had applied to a specific party— "it was simply a decision regarding whom to hire." *Id.* at 406. The court concluded that the commissioners' vote to appoint the African–American woman to the clerk position was an administrative act and, thus, was not protected by legislative immunity. *Id.* at 405–06 ("There can be no question that voting on the appointment of a Board clerk is not the sort of broad 'legislative' activity that is typically associated with grants of absolute immunity."); *Forrester*, 484 U.S. at 229, 108 S.Ct. at 545 (classifying the demotion and discharge of a probation officer by a judge as an administrative act); *see also Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995) (legislators' decision to replace plaintiff, a librarian and a member of a political party, with a member of another political party was an administrative, rather than legislative, act).

Despite defendants' narrow characterization of their actions, we find that their actions did not involve adopting prospective, legislative-type rules. Defendants alternatively refer to their June 17 actions as eliminating the *position* of the Clerk, as well as eliminating the *salary* of the Clerk. They argue that particular meeting was a budget-

ary review session and that their actions were part of the budgetary process, and thus, a protected legislative activity.

We find that the clerk position was never abolished because the Board had no authority to do so under state law requiring each county to have a clerk to the board. N.C. Gen.Stat. § 153A–111. Thus, contrary to the defendants' assertion, this case does not involve the elimination of a position through a Board's preparation of a budget ordinance, but rather the elimination of a particular position's salary, the consolidation of that position with another, and a refusal to hire or reappoint Alexander to the newly created position, thereby effectuating her termination.

Consequently, we classify defendants' action as an administrative personnel decision. The commissioners were not engaged in the process of adopting prospective, legislative-type rules. Rather, the commissioners were engaged in administrative employment decisions that resulted in Alexander's termination. Both the facts underlying the commissioners' decision and the impact of the commissioners' decision were specific, rather than general, in nature. *See Acevedo–Cordero*, 958 F.2d at 23 (citing *Cutting v. Muzzey*, 724 F.2d 259, 261 (1st Cir.1984) (recognizing distinction between general versus specific for determining whether actions are legislative or administrative)). The commissioners' refusal to reappoint Alexander, the elimination of the clerk's salary, the consolidation of the clerk's position with another, and the refusal to select Alexander for the combined position are facts relating to and affecting a particular individual. *Id.* Moreover, the commissioners were not engaged in promulgating or enacting general policies affecting the broader society. *Id.* The actions of the Brunswick County commissioners in refusing to reappoint or hire Alexander constituted administrative actions that are not entitled to the protection afforded by legislative immunity.[3]

We emphasize that our holding in this case is a narrow one. It should not be read to imply that every municipal decision to consol-

---

**3.** Alexander also argues that North Carolina law, as reflected by the content and title of its statutes, supports her position that the defendants' actions were administrative. The district court, howev-

er, did not address whether state law classifies the allegedly discriminatory actions as administrative. In light of our disposition of this case, we also do not reach this issue.

idate or otherwise combine the duties of positions is administrative in character. Such steps will often constitute legitimate structural reforms of a legislative nature.

### III.

■■■■ Having determined that the commissioners, themselves, are not legislatively immune, we turn to the issue of whether Brunswick County is entitled to similar immunity. In *Roberson*, we stated that in order for a municipality to assert such a defense, it must first engage in legislative action. 29 F.3d at 135. Since we found that the County Board's termination of Roberson was administrative, rather than legislative, we held that the board was not entitled to legislative immunity. *Id.* In *Berkley v. City of Charleston*, this court, sitting en banc, recently held that a municipality is not immune from liability under § 1983 for the enactments and actions of its common council legislative body. *Berkley*, 63 F.3d at 302–03. We found that under *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), and *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), even though the Council had engaged in the uniquely legislative act of budgetmaking, "the City of Charleston[was] not entitled to absolute immunity under section 1983 from suits involving the decisions and enactments of the Charleston's Common Council." *Id.*[4] Therefore, the defense of legislative immunity by a county to a suit under § 1983 is no longer a viable defense in this circuit to alleged constitutional violations based on either the legislative or administrative actions of its legislators.[5]

Accordingly, we hold that neither Brunswick County nor its commissioners are entitled to assert the defense of legislative immunity and reverse the district court's grant of summary judgment on that ground. We remand for further proceedings in accordance with this decision.

*REVERSED AND REMANDED.*

---

4. In *Berkley*, we suggested that council members may be privileged from testifying in federal district court regarding their motives in enacting legislation under *Baker* and *Schlitz*. *Berkley*, 63 F.3d at 303 n. 9. We did not reach that question, however, since appellants did not challenge the testimonial privilege, except to the extent that it could afford the City of Charleston immunity from liability. We, likewise, refuse to address the testimonial privilege, because the Brunswick commissioners in this case clearly waived any such privilege. Holden, Jones, and Shaw testified extensively as to their motives in depositions with their attorney present, without objection. *See Marylanders for Fair Representation v. Schaefer*, 144 F.R.D. 292, 298 (D.Md.1992) (legislative privilege "is a personal one and may be waived or asserted by each individual legislator"); *Virgin Islands v. Lee*, 775 F.2d 514, 520 n. 7 (3rd Cir.1985) (legislator who was voluntarily deposed by Assistant United States Attorney "appears" to have waived any testimonial privilege under the immunity provision of the Virgin Islands constitution, with respect to the deposition).

5. Alexander argues that Brunswick County waived immunity by purchasing liability insurance under N.C. Gen.Stat. 153A–435, which provides that "purchase of insurance pursuant to this subsection waives the county's governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function." Because we find that the county is not entitled to legislative immunity, we do not reach the issue of whether it waived any immunity by the purchase of liability insurance.