Joseph Michael Donovan
COOPER, Plaintiff,

v.

LEE COUNTY BOARD OF
SUPERVISORS, et al.,
Defendants.

Civil Action No. 96–264–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

May 30, 1997.

Gerald L. Gray, Law Firm of Gerald Gray, Clintwood, VA, Roy Mark Jessee, Mullins, Thomason & Harris, Norton, VA, for Plaintiff.

Steven R. Minor, Elliott, Lawson & Pomrenke, Bristol, VA, for Defendants.

## OPINION and ORDER

JONES, District Judge.

The plaintiff, Joseph Michael Donovan Cooper, a deputy of the Lee County, Virginia Commissioner of Revenue ("Commissioner"), brings this action under 42 U.S.C.A. § 1983 (West 1994), against the Lee County Board of Supervisors ("Board") and individual members of the Board, claiming that he was deprived of valuable employment benefits solely because of his political affiliation and activities, thereby infringing his constitutional rights. The defendants have filed a motion to dismiss, claiming that their actions are shielded by the doctrine of legislative immunity. Discovery has been stayed pending the resolution of this issue. Oral argument was held, and the parties have had additional time to file affidavits.[1] I find that the plaintiff's action against the individual members of the Board is barred by the doctrine of legislative immunity, and grant their motion to dismiss. The plaintiff's action against the Board is not so barred, and I deny its motion to dismiss.

*I*

The facts precipitating this action are not in dispute. Under Virginia law, the Commissioner of Revenue is an independent constitutional officer—an officer whose power does not derive from the State or the county. Va. Const. art. VII, § 4. The salaries of the Commissioner and its staff are paid by the county, but the county is reimbursed these expenditures by the Compensation Board of the Commonwealth of Virginia ("Compensation Board"). The Compensation Board also reimburses the county for costs for payroll taxes, group life insurance, and retirement system benefits for the permanent, salaried staff of constitutional officers. Additionally, the Compensation Board allocates certain lump sum amounts to local commissioners' offices to be used to hire additional employees. It is within the Commissioner's discretion to determine to what particular use this money is applied—the Commissioner may hire any number employees at any number of hours. For example, the Commissioner may hire two employees who work only twenty hours per week each, or one employee may be hired to work forty hours per week. The Compensation Board does not reimburse the county for benefits for these non-salary, or what it classifies as "part-time (hourly)" or "part-time temporary" employees, although it does reimburse the county for their payroll taxes. *See* Poe Decl., Exh. 11; Hanes Aff. ¶ 5. According to the Compensation Board, payment of fringe benefits to these employees is at the discretion of the locality. Hanes Aff. ¶ 5.

---

1. Accordingly, I will treat the motions to dismiss as motions for summary judgment. Fed.R.Civ.P. 12(b).

Cooper, an active Democrat, was hired by the Lee County Commissioner of Revenue, Tommy Livesay, also a Democrat, in February 1992. Cooper's position was the only such position in that office funded by this discretionary lump sum money from the Compensation Board. Lee County did not contribute to Cooper's salary, but did provide him health, life insurance, and retirement benefits.

The Lee County Board of Supervisors was comprised of a Democratic majority until January 1996. In the 1995 general elections, the Republican party gained control of the Board, and an incumbent Republican member, Marty Hensley, was elected chairman. On January 19, 1996, shortly after the newly elected Board members assumed their duties, the Board instructed Livesay to vacate the office used by Cooper. The plaintiff alleges that in February 1996, this direction was held in abeyance, until, according to the plaintiff, the Board could confirm its authority to take this action. In June 1996, at a regularly scheduled meeting, the Board voted to discontinue supplemental payments to state employees. Further, the budget approved by the Board did not contain an appropriation for fringe benefits for Cooper. By letter dated July 2, 1996, the county administrator, Dane Poe, informed Cooper that since the Compensation Board classified his position as that of a temporary employee, he was not eligible for fringe benefits under county policy, as reflected in the Lee County employee handbook and personnel policy, which provided that only full-time (those who worked more than 32 hours), permanent employees were eligible for benefits. Cooper's benefits subsequently were discontinued.

Although Cooper alleges in his complaint that he is the only employee for whom the county ceased benefits payments, Poe also sent a similar letter to Greg Edwards, an assistant Commonwealth's attorney, stating that the Board had voted to discontinue supplemental payments to state employees, and therefore would not pay for medical insurance on Edwards' behalf. The Board did not ultimately discontinue Edwards' benefits because he informed the Board, that although the Compensation Board classified his position as part-time, it was indeed a *permanent salaried* position, and the "part-time" designation only connotes that assistant Commonwealth's attorneys are also allowed to engage in the private practice of law. Poe Decl. ¶ 12–16. The county did discontinue benefits for one employee in the treasurer's office, and for three magistrates. Poe Decl. ¶ 10.

The plaintiff contends that the defendants' actions violate his First Amendment rights because he has been denied valuable benefits of employment due to his political affiliation.[2] The defendants contend that their actions in ceasing supplemental payments to employees whose salaries are reimbursed by the Compensation Board, including those for Cooper, are shielded by the doctrine of legislative immunity.

## II

Members of local governing bodies perform a variety of functions, and accordingly act in many capacities. *Alexander v. Holden*, 66 F.3d 62, 65 (4th Cir.1995). To facilitate governance, and to avoid the chilling effect personal liability might impose, particular functions of legislators are cloaked with absolute immunity from suit. *Hollyday v. Rainey*, 964 F.2d 1441, 1443 (4th Cir.1992) ("legislators must be permitted to discharge their duties without fear of being subjected to the cost and inconvenience of a trial at which their motives come under scrutiny").[3]

---

**2.** Counts 3 and 4 of the plaintiff's complaint allege that defendant Hensley violated certain provisions of state law and in the course of doing so, caused emotional distress to Cooper. Given that the claim supplying the federal basis of jurisdiction against Hensley is to be dismissed, I find that these state law claims, too, should be dismissed. 28 U.S.C.A. § 1367(c)(3) (West 1993); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir.1995). The claims are not connected legally or factually to the remaining claim against the Board, and in view of the early nature of this dismissal, judicial economy would not be served by retaining jurisdiction over the state claims.

**3.** Aside from this consideration, the doctrine of legislative immunity insures that partisan affairs are confined to the local political arena and kept away from the federal courts. *Tenney v. Brandhove*, 341 U.S. 367, 378, 71 S.Ct. 783, 789, 95 L.Ed. 1019 (1951).

However, legislative immunity only acts as a shield against liability when members act in a legislative capacity; administrative or executive types of action are not afforded full protection. *Roberson v. Mullins*, 29 F.3d 132, 134 (4th Cir.1994). Accordingly, legislative immunity attaches when legislators act within a traditional legislative province or adopt prospective legislative-type rules. *Id.* at 134–135.

■ Certain generalities may be made concerning the boundaries of legislative immunity. On one end of the wide spectrum constituting local legislative action, the termination of a specific employee, where a governing entity acts much like any other employer, can be characterized as administrative, and not subject to the protection of immunity. *Alexander*, 66 F.3d at 65. On the other end, budgetary decisions, where the legislature prospectively determines the direction of local government spending, are generally said to constitute legislative action. *Id.* While there is of course much blurring of lines in the middle, the fixing of those lines is important to "preserve[ ] the balance between inhibiting public officials from exercising their essential duties and protecting victims of wrongs committed by public officials." *Id.* at 66 (citing *Rateree v. Rockett*, 852 F.2d 946, 951 (7th Cir.1988)). Because the scope of protection depends on the particular action of the legislators, it first must be determined whether the action in question is legislative or administrative. *Alexander*, 66 F.3d at 65.

■ In reaching this determination, the Fourth Circuit has used a test, formulated by the First and Fifth Circuits, to ascertain whether an act is legislative rather than administrative. The analysis focuses on (1) "the nature of the facts used to reach the ... decision" and (2) "the particularity of the impact" of the state action. *Alexander*, 66 F.3d at 66 (citing *Acevedo–Cordero v. Cordero-Santiago*, 958 F.2d 20, 23 (1st Cir.1992) and *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir.1991)). Under this framework, actions relating to a specific individual are most likely administrative, while those that impact the general community or that establish a general policy are legislative in nature. *Id.*

■ Decisions that affect employment sometimes are difficult to classify. Such a decision that appears to impact certain persons more adversely than the community at large, and ultimately relates to employment, may in fact be legislative in nature. For example, the Fourth Circuit has held that local board members are entitled to legislative immunity when the board completely eliminates positions and does not refill them with other persons. *Rateree*, 852 F.2d at 950. In these instances, although only one person may be immediately impacted, the legislature is actually acting prospectively to structure local government. *Id.* It is when the decision made by the legislators is not prospective or can affect only one employee, that immunity will not attach. *See Roberson v. Mullins*, 29 F.3d at 135 (4th Cir.1994), *quoted in Alexander*, 66 F.3d at 66 (" '[t]erminating a county employee [without removing the position itself] is plainly unrelated to the process of adopt[ing] prospective, legislative-type rules.' ").

In *Alexander*, a local board of commissioners, comprised of a majority of Republicans, voted to eliminate the salary of the clerk to the board, a Democrat, but to retain and increase the salary of the deputy clerk. The board then essentially created a new position by merging a current employee's responsibilities with the clerk's duties. A Republican later filled what became the clerk's position. The Fourth Circuit characterized the action as the elimination not of a position but of a particular individual's (the plaintiffs) salary, the consolidation of that position with another, and the refusal to reappoint the plaintiff to the new position, thereby terminating her. The board accordingly engaged in (1) specific action, and (2) the facts underlying the board's decision related to a specific individual. *Alexander*, 66 F.3d at 67. The Fourth Circuit held that these actions were administrative, personnel decisions, not the type of prospective, legislative action that would be afforded legislative immunity. *Id.* Nonetheless, the Fourth Circuit expressly noted that its holding in *Alexander* was a narrow one, and that the consolidation of particular jobs

in local government as in *Alexander* will "often constitute legitimate structural reforms of a legislative nature." *Id.* at 67–68.

■ As a board member is not entitled to legislative immunity when performing administrative functions, neither is immunity available when a board seeks to enforce preexisting policy. *Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal, Virginia,* 865 F.2d 77, 79 (4th Cir.1989); *Scott v. Greenville Co.,* 716 F.2d 1409, 1423 (4th Cir.1983). In *Front Royal,* the legislators denied the plaintiff's request for sewer service. The court held that those decisions "had to do with zoning enforcement rather than with rule making" and were not entitled to absolute legislative immunity. *Id.* at 79.

### III

Here the plaintiff contends that the action by the Board in eliminating his benefits was simply an employment decision to which no immunity attaches, rather than action that can be characterized as a prospective legislative-type act. The plaintiff alleges that the defendants have done no more than decide to enforce a pre-existing policy, and a board that merely acts to enforce cannot be said to act to legislate. *Scott,* 716 F.2d at 1423.

■ Examining the whole of the circumstances, I hold that the individual Board members are entitled to legislative immunity because the action they took, which ultimately resulted in Cooper's loss of benefits, involved a core legislative function, that is, how the county will budget its limited resources. The allocation of scarce resources, and the necessary selection of often difficult priorities, are the quintessential tasks of a local governing board, and represent an important realm in which immunity must be available. Despite Cooper's assertions to the contrary, this case is unlike *Alexander,* and the facts do not support the conclusion that Board's decision to no longer pay for benefits for which the county is not reimbursed was (1) specific to Cooper, or that (2) the facts underlying the decision related only to Cooper.

Further, I do not believe that the Board's action can be said to be enforcement of a preexisting policy. While it is true that the county administrator notified Cooper that his benefits were no longer being paid because county policy did not require them to be, that rationalization appears to concern whether or not the board would run afoul of Virginia law in their actions,[4] and does not convert an action of the Board in carrying out its legislative function into an administrative one.[5]

### IV

Despite my ruling that the individual Board members are entitled to legislative immunity, I find that Fourth Circuit precedent clearly commands, and the parties agree, that the Board itself enjoys no legislative immunity to a suit under section 1983, even where legislative action forms the basis for the suit. *Alexander,* 66 F.3d at 68 (citing

---

4. Virginia law requires that:

[i]n the event a county or a city elects to provide [health, life, or retirement] benefits for its officers and employees, it shall provide such [benefits] to the constitutional officers and their employees on the same basis as provided to other officers and employees, unless the constitutional officers and employees are covered under a state program, and the cost of such local program shall be borne entirely by the locality or shared with the employee.

Va.Code Ann. § 15.1–7.3 (Michie 1989 & Supp. 1996). It appears that the county, when deciding to no longer supplement employees whose salaries are reimbursed by the Compensation Board, may have been concerned whether it was treating those employees differently than county employees. However, as Cooper is not a county employee, the county policy regarding the status of employees has no application to him, and the

Board cannot be said here to have acted to enforce a preexisting policy.

5. The plaintiff also claims the board members exceeded the scope of their authority in deciding to deny benefits to Cooper. The plaintiffs contend the members' actions were *ultra vires* because the members potentially violated county personnel policy, violated a Virginia statute, and applied the board's measure to decline to pay supplements to state employees to Cooper, who is not a state employee. Even were the plaintiff's allegations true, the actions of the board members would not rise to *ultra vires* acts. There has been no allegation of criminal conduct. *See Bruce v. Riddle,* 631 F.2d 272, 279 (4th Cir.1980). Instead, the board members made a legislative decision at a regularly scheduled board meeting. The board members were acting within their legislative capacity, and are entitled to legislative immunity.

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)); *Berkley v. Common Council of City of Charleston,* 63 F.3d 295, 303 (4th Cir.1995).

 Although the defendant Board agrees that it is not immune from suit, it contends summary judgment is appropriate as to it because the individual board members, immune from suit, cannot be compelled to testify as to their motives, *Schlitz v. Commonwealth of Virginia,* 854 F.2d 43, 46 (4th Cir.1988), *overruled in part by Berkley,* 63 F.3d at 303, and thus the suit against the Board is barred. It is true that the individual board members enjoy a testimonial privilege flowing from the doctrine of legislative immunity. *See Burtnick v. McLean,* 76 F.3d 611, 613 (4th Cir.1996). However, while the plaintiff therefore must establish his prima facie case without the benefit of the supervisors' testimony, it does not necessarily follow that the suit against the Board is barred by the supervisors' privilege. Were that the case, Fourth Circuit precedent declining to extend immunity to a legislative board would in effect be defeated any time individual board members were entitled to exercise immunity. Further, the testimonial privilege may be waived. *Alexander,* 66 F.3d at 68 n. 4 (4th Cir.1995). The Board's motion to dismiss will be denied.[6]

### V

In accord with the foregoing, it is **ORDERED** as follows:

1. The motions to dismiss by defendants Marty Jay Hensley, James William, III, Donald Merle Williams, and Timothy Wayne Belcher, as to counts 1 and 2 of the complaint, are granted on the ground of legislative immunity and said defendants are dismissed from this action;

2. The motion to dismiss by defendant Lee County Board of Supervisors is denied;

3. Counts 3 and 4 of the complaint are dismissed without prejudice for lack of subject matter jurisdiction; and

4. The stay of discovery is rescinded.

---

**6.** Given my ruling, it is not necessary to address the individual defendants' claims of qualified immunity.