NORTHFIELD DEVELOPMENT CO., INC., PLAINTIFF v. THE CITY OF BURLINGTON, A POLITICAL SUBDIVISION OF THE STATE OF NORTH CAROLINA, DEFENDANT

No. COA99-64

(Filed 4 January 2000)

## 1. Zoning— manufactured homes overlay district—change in ownership of property—standing—not moot

In a case concerning the City's denial of two separate requests by plaintiff for manufactured home overlay district zoning for two parcels of land, the trial court erred in dismissing plaintiff's arbitrary/capricious and N.C.G.S. § 160A-383.1 claims based on mootness and lack of standing, even though plaintiff no longer owns one of the pertinent parcels of land, because: (1) plaintiff was to receive an additional $126,280 if the City rezoned the property by 1 February 1998, thus constituting a specific personal and legal interest in the rezoning process; (2) the failure to rezone the property directly and adversely affected plaintiff; and (3) the property ownership changed before the filing of the complaint, the relief sought has not been granted, and the questions originally in controversy remain. Plaintiff's unreasonable, arbitrary, and capricious claims with respect to both parcels of land remain viable and are to be addressed on remand.

## 2. Zoning— manufactured homes overlay district—preclusion of use not shown

In a case concerning the City's denial of two separate requests by plaintiff for manufactured home overlay district zoning for two parcels of land, the trial court did not err in dismissing plaintiff's N.C.G.S. § 160A-383.1 claims, based on allegations that the City has adopted or enforced zoning regulations precluding the use of manufactured homes in the City's entire zoning jurisdiction, because the City has approved two manufactured home overlay district petitions, thus permitting placement of manufactured homes within certain districts within the City's jurisdiction.

## 3. Zoning— manufactured homes overlay district—substantial presence—city not required to adopt

In a case concerning the City's denial of two separate requests by plaintiff for manufactured home overlay district zoning for two parcels of land, the trial court did not err by dismiss-

NORTHFIELD DEV. CO. v. CITY OF BURLINGTON

[136 N.C. App. 272 (2000)]

ing plaintiff's N.C.G.S. § 160A-383.1 claims, based on allegations that the statute reveals a legislative intent that there be a substantial presence of manufactured homes within each municipality and the City's approval of only two of twelve manufactured home overlay district petitions does not constitute a substantial presence, because this statute does not require a city to adopt any manufactured home overlay district zoning.

4. **Zoning— manufactured homes overlay district—council not obligated to approve petitions—council retains discretion**

In a case concerning the City's denial of two separate requests by plaintiff for manufactured home overlay district zoning for two parcels of land, even though the City's zoning code provides that manufactured home overlay district petitions are "permitted by right" in R-9 districts, the trial court did not err in dismissing plaintiff's N.C.G.S. § 160A-383.1 claims because the Council is not obligated to approve the petitions and retains the discretion to make the designation.

5. **Zoning— manufactured home overlay district—deposition of mayor—legislative immunity**

In a case concerning the City's denial of two separate requests by plaintiff for manufactured home overlay district zoning for two parcels of land, the trial court's protective order with respect to plaintiff's request to take a deposition of the mayor of City is modified and affirmed in that: (1) the mayor cannot be compelled to testify about his actions, intentions, and motives with respect to the manufactured home overlay district petitions in this action or any other quasi-judicial or legislative matters addressed by the Council while the mayor served on that body based on legislative immunity; (2) he did not abandon that privilege when he spoke with the newspapers, as there is no explicit showing he intended to waive the privilege; and (3) the part of the order prohibiting any questioning of the mayor is reversed because the relevancy of those questions must be judged by the trial court.

Judge HUNTER concurring in part and dissenting in part in a separate opinion.

Appeal by plaintiff from an order and judgment dated 13 October 1998 and from an order dated 13 October 1998 by Judge J.B. Allen, Jr.

in Alamance County Superior Court. Heard in the Court of Appeals 19 October 1999.

*Smith, James, Rowlett & Cohen, L.L.P., by J. David James, for plaintiff-appellant.*

*Faison & Gillespie, by Reginald B. Gillespie, Jr. and John-Paul Schick; and City Attorney Robert M. Ward, for defendant-appellee.*

GREENE, Judge.

Northfield Development Co., Inc. (Plaintiff) appeals the entry of an "Order and Judgment" granting the City of Burlington's (City) motion to dismiss four of the five claims asserted by Plaintiff. Plaintiff also appeals the entry of a protective order requested by City prohibiting Plaintiff from taking the deposition of City's mayor, Mr. Joe Barbour (Mayor Barbour).

*Order and Judgment*

Plaintiff's complaint, filed 10 November 1997, and amendment to the complaint assert claims arising out of City's denial of two separate requests by Plaintiff for Manufactured Home Overlay District (MHOD) zoning for two parcels of land.

With respect to the first MHOD request, the pleadings allege that on 29 January 1997, Plaintiff entered into an agreement to sell approximately 63.14 acres of land to Randolph Isley, Jr. (Isley) and Gordon Oliver (Oliver). The agreement to sell the property (Isley/Oliver property) was made contingent on City's approval of MHOD zoning to cover the Isley/Oliver property.

On 5 February 1997, an application was filed by Isley and Oliver to re-zone the Isley/Oliver property MHOD. The application was considered by the Burlington Planning and Zoning Commission (the Planning Board) at its 24 February 1997 meeting. Although the Planning Board's staff recommended the application be approved, the Planning Board voted seven-to-two to recommend to the Burlington City Council (the Council) that the application be denied. After the Planning Board voted to recommend a denial of the MHOD application, Isley, Oliver, and Plaintiff, on 15 March 1997, and again on 13 May 1997, amended the agreement for the sale of the Isley/Oliver property to remove the contingency that the property be zoned MHOD. The agreement, as amended, provided the purchase

NORTHFIELD DEV. CO. v. CITY OF BURLINGTON

[136 N.C. App. 272 (2000)]

price would be reduced from $6,000.00 per acre to $4,000.00 per acre, with the further condition that if the Isley/Oliver property was re-zoned MHOD by 1 February 1998, Isley and Oliver would pay Plaintiff an additional $2,000.00 per acre. The Isley/Oliver property was then transferred from Plaintiff to Isley and Oliver.

The Council declined to conduct a public hearing on Plaintiff's application. Plaintiff's complaint alleges: (1) the denial to hold a public hearing violated City's zoning regulations, thus, violating Plaintiff's due process rights under Article I, Section 19 of the North Carolina Constitution, because the denial was unreasonable, arbitrary, and capricious; (2) the failure to zone the Isley/Oliver property MHOD violated Plaintiff's due process rights, was unreasonable, arbitrary, and capricious, and thus violated Article I, Section 19 of the North Carolina Constitution; and (3) the failure to re-zone the Isley/Oliver property MHOD violated section 160A-383.1 of the North Carolina General Statutes. Plaintiff further alleges it had been damaged by Defendant's actions in the amount of $126,280.00, which represented the additional $2,000.00 per acre Plaintiff would have been paid if the Isley/Oliver property had been re-zoned to MHOD.

With respect to the second request for MHOD zoning, Plaintiff's complaint alleges that Plaintiff owns a tract of land, consisting of approximately 69 acres, situated at the corner of Blackwell Road and Hazel Drive (Blackwell property) in Alamance County. On 11 July 1997, Plaintiff filed an application to re-zone the Blackwell property to MHOD. The application was considered by the Planning Board at its 28 July 1997 meeting. The Planning Board voted to recommend to the Council that the application be denied. On 7 October 1997, the Council denied the application.

Plaintiff's complaint alleges City's refusal to re-zone the Blackwell property as a MHOD: (1) violated section 160A-383.1; and (2) was unreasonable, arbitrary, and capricious, thus violating Article I, Section 19 of the North Carolina Constitution.

In support of its section 160A-383.1 claim with respect to both tracts of land, Plaintiff alleges that since City enacted the use of MHODs, it had approved only 2 of 12 MHOD petitions and that no MHOD petitions had been approved since May of 1994. It further alleges section 160A-383.1 has been violated by City because the adoption and enforcement of the MHOD regulations "had the effect of excluding manufactured homes from [City's] zoning jurisdiction."

Plaintiff's complaint requests a declaration that City had violated N.C. Gen. Stat. § 160A-383.1, recovery of $126,280.00, and injunctive relief compelling Defendant to re-zone the Isley/Oliver property and the Blackwell property MHOD.

City's answer alleges Isley and Oliver were the applicants for MHOD zoning for the Isley/Oliver property, and the application identified Plaintiff as the owner of the property. City further alleges Isley and Oliver abandoned their application and, therefore, no hearing was required or conducted to "review the Planning Board's recommendation that the application be denied." The answer admits City had approved only 2 of 12 MHOD petitions but denies it had violated section 160A-383.1.

Plaintiff was permitted to incorporate and include the affidavit of Isley as an amendment to its complaint. In this affidavit, Isley stated, in pertinent part: (1) he and his partner, Oliver, filed the application seeking to have the Isley/Oliver property zoned MHOD; (2) following the Planning Board hearing, he and Oliver reached an agreement authorizing Plaintiff to appeal the Planning Board decision to the Council to seek the MHOD to cover the property; and (3) he did not withdraw his application for the MHOD to cover the Isley/Oliver property.

Plaintiff was also permitted to incorporate and include in its complaint the following provisions from Chapter 32 of the City Code, entitled "ZONING ORDINANCE": City Code, § 32.2R, entitled "Manufactured Housing Overlay District"; and City Code, § 32.9, entitled "TABLE OF PERMITTED USES."

Section 32.2R of City's Code provides, in pertinent part:

1. Purpose

It is the purpose of this section to provide alternative, affordable housing opportunities by providing for the placement of manufactured housing within manufactured housing districts and/or subdivisions as defined within this ordinance. The Manufactured Housing Overlay District is established pursuant to Article 19, Section 160A-383.1(e) of the North Carolina General Statutes.

. . . .

NORTHFIELD DEV. CO. v. CITY OF BURLINGTON

[136 N.C. App. 272 (2000)]

3. Manufactured Housing Districts—Designation

A. A Manufactured Housing Overlay District is hereby established as a district which may overlay R-6, R-9 and R-12 Residential Districts,[1] the extent and boundaries of which shall be shown on the official zoning map for the City of Burlington and its extraterritorial zoning jurisdiction. All uses permitted in the above residential districts, whether by right or Special Use Permit, shall be permitted within manufactured housing districts. A manufactured housing district shall consist of either:

(1) a minimum of eight existing contiguous lots and a minimum of 65,000 square feet, excluding public street right-of-way; or,

(2) a minimum of 95,000 square feet in a single contiguous area, excluding public street right-of-way.

Manufactured housing districts and/or subdivisions established pursuant to this ordinance may contain a combination of manufactured housing, modular housing or conventional stick-built housing.

B. Uses established within Manufactured Housing Overlay Districts shall conform with other regulatory provisions within this ordinance, including off-street parking and setback requirements. Additionally, all manufactured homes placed within Manufactured Housing Overlay Districts shall conform with the dimensional and siting requirements of this section.

C. The Burlington City Council shall have the authority to designate, amend or repeal Manufactured Housing Overlay Districts and/or subdivisions. Requests regarding Manufactured Housing Overlay Districts shall be processed in accordance with the provisions of the Burlington Zoning Ordinance.

Burlington, N.C., Code § 32.2R (1989).

Section 32.9 of City's Code provides, in pertinent part, that MHODs "are permitted by right" in Residential Districts R-6, R-9 and R-12. Burlington, N.C., Code § 32.9 (1979). This section of the City

---

1. Although the record is not clear, the parties have briefed this case with the apparent understanding that the property in question is zoned as either R-6, R-9 or R-12. We, accordingly, do not see this as disputed in this case.

Code also provides that "[a]ll uses are subject to all sections of this chapter." *Id.*

On 5 August 1998, City moved to dismiss Plaintiff's Isley/Oliver property claims in their entirety, based on the allegation that Plaintiff did not have standing to pursue the claims because it had transferred the property to Isley and Oliver before this action was commenced. City also sought dismissal of both section 160A-383.1 claims.

The trial court dismissed all of Plaintiff's claims concerning the Isley/Oliver property on the ground Plaintiff had no standing to assert the claims and on the alternative ground that the claims were moot. The trial court "[i]n the alternative and in addition," dismissed both of Plaintiff's claims concerning City's alleged violations of section 160A-383.1.

### Protective Order

On 30 June 1998, Plaintiff served Notice of Deposition seeking to depose Mayor Barbour on 20 July 1998. City resisted the taking of that deposition, and on 17 July 1998, served a motion for protective order requesting Plaintiff be prohibited from taking the deposition based on legislative immunity and/or lack of relevance.

Evidence was presented relating to the protective order showing that on 24 April 1997, Mayor Barbour was quoted in the local newspaper, regarding the MHOD re-zoning requests, as saying:

> "I just don't see the point in even having the (application process) if it's not ever going to be approved . . . . You're making people jump through a lot of hoops [if] they want to have one of these things approved."
>
> . . . .
>
> (Planning director) Bob Harkrader said . . . "that [if] that one was not approved, he couldn't think of any that would be approved[.]"

Mike Wilder, *Manufactured Homes Not Welcome in City? Developer Threatens Lawsuit; Most Recent Requests Denied by Council,* BURLINGTON TIMES-NEWS, April 24, 1997, at 1-A, 4-A. In another article discussing the Council's denial of a MHOD re-zoning application, Mayor Barbour was quoted as saying, "[t]he neighbors have been up here two or three times and they are tired of coming. . . . There was no way in the world this was going to pass, in my opinion." Michele

Besso, *Council Rejects Housing Plan*, ALAMANCE NEWS, May 6, 1998, at C2. In a subsequent article about the Council's decision to postpone its decision of whether to provide an extension of water to Haw River, an area outside of City's extraterritorial jurisdiction (ETJ), in order to ensure that an agreement with Haw River fit within City's existing policy not to serve areas beyond City's limits or ETJ, Mayor Barbour concurred with the Council's decision and was quoted as stating, "[o]therwise they could be surrounded by trailer parks." *Burlington Council Wants to be Sure Before Extending Another Water Line to Haw River*, ALAMANCE NEWS, May 21, 1998, at 7A.

The trial court entered a protective order prohibiting Plaintiff from deposing Mayor Barbour based on "legislative immunity and/or lack of relevance."

The issues are whether: (I) Plaintiff had standing to assert its claims concerning the Isley/Oliver property; (II) City violated section 160A-383.1 of the North Carolina General Statutes; and (III) Mayor Barbour is privileged from being deposed based on legislative immunity.

I

*Standing*

[1] Plaintiff argues it has standing to assert its claims relating to the Isley/Oliver property because it retains a pecuniary interest in the MHOD re-zoning question. We agree.

A party has standing to contest zoning and re-zoning decisions when he "has a specific personal and legal interest in the subject matter affected by the [zoning/re-zoning decision] and . . . is directly and adversely affected thereby." *Taylor v. City of Raleigh*, 290 N.C. 608, 620, 227 S.E.2d 576, 583 (1976) (declaratory judgment action seeking to invalidate a re-zoning ordinance).

In this case, although Plaintiff no longer owns the Isley/Oliver property, which is the subject of the re-zoning request, it was to receive an additional $126,280.00 if City re-zoned the property by 1 February 1998. This contractual pecuniary interest in the re-zoning process constitutes a "specific personal and legal interest" and the failure to re-zone the property "directly and adversely affected" Plaintiff. Plaintiff, therefore, has standing to contest the re-zoning denial. It is not material the re-zoning did not occur on or before 1 February 1998, the date set in the contract. The facts giving rise to

NORTHFIELD DEV. CO. v. CITY OF BURLINGTON

[136 N.C. App. 272 (2000)]

Plaintiff's claims all relate to actions of City on or before 1 February 1998, after a re-zoning request filed on 5 February 1997.

City also argues the Isley/Oliver claims are moot because Plaintiff does not own the property subject to the re-zoning request. We disagree. A case is moot if "during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue." *In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978), *cert. denied*, 442 U.S. 929, 61 L. Ed. 2d 297 (1979). In this case, the ownership of the property at the time the complaint was filed is simply not relevant to the mootness question. It would be a different matter if the property ownership changed after the filing of the action. *Messer v. Town of Chapel Hill*, 346 N.C. 259, 260, 485 S.E.2d 269, 270 (1997) (case was moot when plaintiff transferred ownership of property after filing of complaint). In this case, the property ownership changed *before* the filing of the complaint, the relief sought has not been granted and, the questions originally in controversy remain in controversy.

It was, therefore, error for the trial court to dismiss Plaintiff's arbitrary/capricious and section 160A-383.1 claims based on mootness and lack of standing.[2]

II

*Section 160A-383.1 Claims*

[2] Plaintiff argues City has violated the provisions of section 160A-383.1, in particular sub-section (c), which provides that "[a] city may not adopt or enforce zoning regulations or other provisions which *have the effect of excluding manufactured homes from the entire zoning jurisdiction*." N.C.G.S. § 160A-383.1(c) (1994) (emphasis added). We disagree.

The pleadings simply do not support the claim that City has adopted or enforced zoning regulations precluding the use of manufactured homes in City's "entire zoning jurisdiction." Indeed, Plaintiff alleges City has approved 2 MHOD petitions, thus permitting the placement of manufactured homes within certain districts within City's jurisdiction.

---

2. We reject City's argument that *Messer* requires a different result. The Supreme Court dismissed, as moot, plaintiffs' claim contesting a re-zoning decision on the ground the original party had sold the property while the case was on appeal, even though plaintiffs had made a claim for damages. *Messer*, 346 N.C. at 260, 485 S.E.2d at 270. In *Messer*, however, there was no evidence of a contract between the seller and the buyer, as in the present case, that provided for an increased sales price contingent upon re-zoning.

**[3]** Plaintiff also contends section 160A-383.1 reveals a legislative intent that there be "a substantial presence of manufactured homes" within each municipality and the approval of only 2 of 12 MHOD petitions does not constitute a "substantial presence." Again, we disagree with Plaintiff's premise. Section 160A-383.1 does not require a city to adopt any MHOD zoning. N.C.G.S. § 160A-383.1(e) (city "may designate a manufactured home overlay district within a residential district"). The legislature has only mandated cities *"consider* allocating more residential land area for manufactured homes." N.C.G.S. § 160A-383.1(a) (emphasis added).

**[4]** Finally, Plaintiff argues City violated its own zoning regulations, promulgated pursuant to section 160A-383.1, in denying its MHOD petitions, in that section 32.9 of City Code provides MHODs are "permitted by right" in R-9 districts. We disagree. Although "permitted" or authorized in certain districts, Burlington, N.C., Code § 32.9, the Council is not obligated to approve a MHOD and retains the discretion to make the designation. Burlington, N.C., Code § 32.2R(3)(C).

Accordingly, the trial court correctly dismissed Plaintiff's section 160A-383.1 claims.

III

*Protective Order*

**[5]** Plaintiff argues Mayor Barbour is not entitled to a testimonial privilege, and, if he is, he has waived this privilege and should be required to appear for the taking of his deposition.

Individuals, including county commissioners and city council members, are entitled to absolute legislative immunity for "all actions taken 'in the sphere of legitimate legislative activity.' " *Bogan v. Scott-Harris,* 523 U.S. 44, 54, 140 L. Ed. 2d 79, 88 (1998) (citations omitted); *see Vereen v. Holden,* 121 N.C. App. 779, 782, 468 S.E.2d 471, 474 (1996), *disc. review allowed and remanded,* 345 N.C. 646, 483 S.E.2d 719, *on remand,* 127 N.C. App. 205, 487 S.E.2d 822, *disc. review denied,* 347 N.C. 410, 494 S.E.2d 600 (1997). Zoning and re-zoning are legislative acts. *Sherrill v. Town of Wrightsville Beach,* 81 N.C. App. 369, 373, 344 S.E.2d 357, 360, *disc. review denied,* 318 N.C. 417, 349 S.E.2d 600 (1986). Individuals, including county commissioners and city council members, are entitled to absolute quasi-judicial immunity for actions taken in the exercise of their judicial function. *Hoke v. Bd. of Medical Examiners of the State of N.C.,* 445 F. Supp. 1313, 1314 (W.D.N.C. 1978); 48A C.J.S. *Judges* §§ 88, 89 (1981) (rule of judicial

immunity applies to those performing quasi-judicial functions). These immunities shield the individual from the consequences of the litigation results and provide a testimonial privilege. *See Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996); *Schlitz v. Com. of Va.*, 854 F.2d 43, 46 (4th Cir. 1988), *overruled on other grounds by Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 303 (4th Cir. 1995); *see also Allred v. City of Raleigh*, 7 N.C. App. 602, 613, 173 S.E.2d 533, 540 (1970), *rev'd on other grounds*, 277 N.C. 530, 178 S.E.2d 432 (1971) (cross-examination of members of city council about the motives of decision to re-zone prohibited). These immunities or privileges can be waived, *see Burtnik*, 76 F.3d at 613, but only if there is an "explicit and unequivocal renunciation of the protection," *see United States v. Helstoski*, 442 U.S. 477, 491, 61 L. Ed. 2d 12, 24 (1979) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L. Ed. 1461, 1466 (1938)).

Legislative decisions are "those that affect the entire community because they set general policies that are applicable throughout the zoning ordinance." David W. Owens, *Legislative Zoning Decisions, Legal Aspects* 10 (2d ed. 1999) [hereinafter *Legislative Zoning Decisions*]; *Alexander v. Holden*, 66 F.3d 62, 66 (4th Cir. 1995) (citation omitted) (action is legislative if it involves " 'generalizations concerning a policy or state of affairs' and the 'establishment of a general policy' affecting the larger population"). Quasi-judicial "decisions involve the application of . . . policies to individual situations rather than the adoption of new policies." *Legislative Zoning Decisions*, at 10.

In this case, the initial decision by the Council to amend its zoning ordinance in 1989 to include MHODs was a legislative decision, because it established a general policy affecting the entire community of City. The decision of the Council to approve or deny Plaintiff's petition for MHODs for the Isley/Oliver and Blackwell properties was a quasi-judicial decision because it required application of the MHOD standards set out in City's zoning ordinance to individual situations. The decision to approve or reject MHOD petitions is most analogous to the decision to grant or deny variances or special use permits, which are quasi-judicial in nature. *Sherrill*, 81 N.C. App. at 373, 344 S.E.2d at 360.

Accordingly, Mayor Barbour is entitled to a quasi-judicial testimonial privilege and, thus, cannot be compelled to testify about his actions, intentions, and motives with respect to the MHOD petitions in this action or any other quasi-judicial or legislative matters

**NORTHFIELD DEV. CO. v. CITY OF BURLINGTON**

[136 N.C. App. 272 (2000)]

addressed by the Council while Mayor Barbour served on that body. Furthermore, he did not abandon that privilege when he spoke with the newspapers, as there is no explicit showing he intended to waive the privilege. Thus, to the extent Plaintiff seeks to examine Mayor Barbour about his actions, intentions, or motives with regard to Plaintiff's MHOD petitions or his actions, intentions, or motives with respect to any other quasi-judicial or legislative matters before the Council, the protective order of the trial court is affirmed. N.C.G.S. § 1A-1, Rule 26 (b)(1) (1990) (discovery limited to relevant matter which is not privileged). We, however, reverse the order of the trial court prohibiting *any* questioning of Mayor Barbour, as it would be premature to judge the need for such a protective order.[3]

In summary, the dismissal of Plaintiff's unreasonable, arbitrary, and capricious claims with respect to the Isley/Oliver property is reversed and remanded. In consequence of this reversal, Plaintiff's unreasonable, arbitrary, and capricious claims with respect to both the Isley/Oliver and Blackwell properties remain viable and are to be addressed on remand. The dismissals of the section 160A-383.1 claims are affirmed. The protective order with respect to Mayor Barbour is modified and affirmed.

Affirmed and modified in part, reversed in part and remanded.

Judge WALKER concurs.

Judge HUNTER concurs in part and dissents in part in a separate opinion.

Judge HUNTER concurring in part and dissenting in part in a separate opinion.

I respectfully dissent on the issue of dismissal of plaintiff's claims pursuant to N.C. Gen. Stat. § 160A-383.1. In the determination of whether a complaint is sufficient to survive a motion to dismiss under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), the question presented is

---

3. The trial court also granted City's protective order preventing Plaintiff from deposing Mayor Barbour because of lack of relevance. City argues that if Mayor Barbour cannot assert a privilege preventing Plaintiff from deposing him, the protective order was properly granted because the deposition sought irrelevant and inadmissible information. Since we hold Mayor Barbour possesses a legislative and quasi-judicial privilege, we do not address this issue. To the extent Plaintiff proceeds with the taking of Mayor Barbour's deposition, on matters unrelated to the legislative privilege, the relevancy of those questions must be judged by the trial court.

whether the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. *Harris v. NCNB*, 85 N.C. App. 669, 355 S.E.2d 838 (1987). "A complaint may be dismissed pursuant to Rule 12(b)(6) if no law exists to support the claim made, if sufficient facts to make out a good claim are absent, or if facts are disclosed which will necessarily defeat the claim." *Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). "In ruling upon a Rule 12(b)(6) motion, the trial judge must treat the allegations of the complaint as admitted." *Id.*

I believe that plaintiff's allegations, treated as true, are sufficient to state a claim upon which relief may be granted under N.C. Gen. Stat. § 160A-383.1. The North Carolina General Assembly in 1987 passed legislation dealing with zoning regulations for manufactured housing, and it found and declared:

> [M]anufactured housing offers affordable housing opportunities for low and moderate income residents of this State who could not otherwise afford to own their own home. The General Assembly further finds that some local governments have adopted zoning regulations which severely restrict the placement of manufactured homes. It is the intent of the General Assembly in enacting this section that cities reexamine their land use practices to assure compliance with applicable statutes and case law, and consider allocating more residential land area for manufactured homes based upon local housing needs.

N.C. Gen. Stat. § 160A-383.1(a) (1994). It expressly prohibited cities from adopting or enforcing zoning regulations "which have the effect of excluding manufactured homes from the entire zoning jurisdiction." N.C. Gen. Stat. § 160A-383.1(c) (1994). The legislation allowed cities to adopt and enforce "appearance and dimensional criteria for manufactured homes." N.C. Gen. Stat. § 160A-383.1(d) (1994). It also provided:

> In accordance with the city's comprehensive plan and based on local housing needs, a city may designate a manufactured home overlay district within a residential district. Such overlay district may not consist of an individual lot or scattered lots, but shall consist of a defined area within which additional requirements or standards are placed upon manufactured homes.

N.C. Gen. Stat. § 160A-383.1(e) (1994).

The pleadings indicate that in 1989, pursuant to the foregoing legislation, the City of Burlington ("City") amended its zoning ordinance to provide for Manufactured Housing Overlay Districts ("MHODs"). Its purpose was to "provide alternative, affordable housing opportunities by providing for the placement of manufactured housing within manufactured housing districts and/or subdivisions as defined within this ordinance." Burlington, N.C., Code § 32.2R(1) (1989). Paragraph 3 of § 32.2R established a MHOD which "may overlay R-6, R-9 and R-12 Residential Districts." Burlington, N.C., Code § 32.2R(3) (1989). This ordinance states that MHODs and/or subdivisions established pursuant to it could contain a combination of manufactured housing, modular housing or conventional stick-built housing. The Table of Permitted Uses provides that MHODs are permitted by right in residential districts R-6, R-9 and R-12, and a special use permit is not necessary. Burlington, N.C., Code § 32.9 (1989).

The pleadings in the present case further indicate that since the foregoing amendment was adopted by the City in 1989, twelve petitions for MHODs which contain over 600 lots have been filed. Of those twelve, only two MHODs, one with two lots and one with ten lots, have been permitted. No MHODs have been allowed by the City since 1994.

The City argues that it is not required by N.C. Gen. Stat. § 160A-383.1 to adopt any MHODs in its zoning jurisdiction. Assuming *arguendo* this is correct, I note that the City did in fact amend its ordinance pursuant to N.C. Gen. Stat. § 160A-383.1 to permit MHODs as "a matter of right" in residential districts R-6, R-9 and R-12. Having done so, the City is at least required to treat MHOD petitions in the same manner as it would treat other petitions for uses permitted as of right in a particular district. The acts of the City as shown by the pleadings, taken as true, make me question particularly whether the City has actually established a MHOD in residential districts R-6, R-9 and R-12, since it appears by the facts alleged that any petition for the same is not permitted of right.

While there is no case law identifying what constitutes a violation of N.C. Gen. Stat. § 160A-383.1, I do not believe that the General Assembly intended for this statute to be complied with by the establishment of a MHOD by right in certain residential districts by ordinance and then failing to approve MHODs as a matter of right in those same districts. Approving two petitions with a total of twelve lots certainly should not give a city license to deny all further petitions under the guise of abiding by the intent and purpose of N.C. Gen. Stat.

§ 160A-383.1. Therefore, while I do not believe money damages are appropriate, I do believe the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief may be granted. The claim is based on N.C. Gen. Stat. § 160A-383.1, the facts pled are sufficient to make out a claim that the City has enforced its zoning regulations with the effect of excluding manufactured homes from its entire zoning jurisdiction at least since 1994, and no facts disclosed will necessarily defeat this claim. Therefore, at this point, I believe the plaintiff has shown that it is entitled to proceed in a declaratory judgment action. Accordingly, I would reverse the order of the trial court dismissing these claims.